## In re EMERGENCY BEACON CORPORATION, Debtor.

Bankruptcy No. 76 B 356.

United States Bankruptcy Court,
S.D. New York.

Feb. 22, 1983.

See also, 2d Cir., 665 F.2d 36, 2d Cir., 666 F.2d 754.

Harvey S. Barr, Spring Valley, N.Y., Trustee in Possession and for Trustee in Possession.

Stephen G. Glatzer, New Rochelle, N.Y., pro se.

Guggenheimer & Untermyer, New York City, for Montmartco, Inc.; Ephraim K. Leibowitz, New York City, of counsel.

## DECISION ON APPLICATION TO CHARGE CREDITOR WITH ATTORNEY'S FEES AND COSTS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in possession of Emergency Beacon Corporation (EBC) and a major shareholder of EBC seek to recover attorney's fees, costs and expenses from a creditor, Montmartco, Inc. (formerly known as Montco Inc.) (for the sake of brevity, whenever the court hereinafter refers to Montco, Inc. it will be called Montmartco). The trustee in possession retained counsel to perform legal services for which reimbursement is sought. The major shareholder, Stephen G. Glatzer, the president of EBC, seeks to recover as a pro se litigant. Recovery is sought on the ground that the creditor, Montmartco, vexatiously continued litigation against the estate and that Montmartco's conduct was in bad faith.

### BACKGROUND

In 1968, Stephen G. Glatzer and Rocco Scappatura formed EBC. Glatzer was EBC's president and Scappatura was vicepresident, and after the firm went public, each became a 28% shareholder. In 1974, there was a falling out between the two men. After negotiations which took place on November 3, 1974, Glatzer agreed to leave the company, EBC agreed to pay Glatzer $100,000 per year for two years, and Scappatura agreed to buy Glatzer's shares for $200,000. These agreements were memorialized in the corporate minutes prepared by the corporate secretary, Jack Polish. EBC also agreed that Glatzer could keep certain equipment and that he was to pay EBC the book value of the two company cars in his possession, both vintage Buicks. After Glatzer's departure, Scappatura assumed the management of EBC. Glatzer never received any of the payments called for in the agreements made with EBC and Scappatura.

EBC's financial plight deteriorated under the Scappatura management. On February 18, 1976, EBC filed a petition for an arrangement under Chapter XI of the former Bankruptcy Act, 11 U.S.C. §§ 701–99. During the course of the Chapter XI case, a special meeting of creditors was held to approve the debtor's sale of a company airplane. Montmartco wanted the proceeds to be remitted to it pursuant to Montmartco's secured claim. This request was approved by the court. However, counsel for the debtor also requested authority to issue a certificate of indebtedness to Montmartco pursuant to § 344 of the former Bankruptcy Act, 11 U.S.C. § 744. By issuing the certificate, the debtor hoped to stave off foreclosure by Montmartco. Although the court refused to permit the issuance of a certificate of indebtedness, language to this effect was included in an order submitted by debtor's counsel that was supposed to relate only to the remittance to Montmartco of the proceeds from the sale of the debtor's airplane. There was no opposition to the proposed order, which was signed on the day it was submitted.

On March 11, 1977, the Scappatura-led debtor consented to an adjudication in bankruptcy. Harvey S. Barr, the standby trustee was appointed trustee in bankruptcy. However, EBC's shareholders brought back Stephen G. Glatzer by electing him president at a shareholder's meeting. The shareholders authorized Glatzer to reinsti-

tute the Chapter XI proceedings. A second Chapter XI petition was filed and accepted by the court on April 29, 1977. Harvey S. Barr, as the former trustee in bankruptcy, continued as trustee in possession pursuant to § 342 of the former Bankruptcy Act, 11 U.S.C. § 742 and Bankruptcy Rule 11–18(b). The secured creditor, Montmartco, was allowed to foreclosure on all of the debtor's personal property. The second mortgage on the debtor's real estate has matured and the funds for payment are being held in escrow in a money market fund pending a determination of this dispute as to attorney's fees, costs and expenses. Therefore, apart from the mortgage, the balance of Montmartco's claim is unsecured.

On May 9, 1978, Montmartco filed its proof of claim for $217,363.75, with interest at 24% per annum from November 1, 1977. Montmartco claimed an administration priority status by reason of the certificate of indebtedness. The trustee in possession objected to the certificate of indebtedness because it had been issued without notice, without cause, without consideration and had been procured without full disclosure to the court. The Bankruptcy Court sustained the objection to the certificate of indebtedness and ruled that the court never intended to authorize the issuance of the certificate of indebtedness. The Bankruptcy Court pointed out that the order relating to the proceeds from the sale of the airplane should not have included language approving the issuance of a certificate of indebtedness, especially since the court expressly refused to entertain the oral application for a certificate of indebtedness. *In re Emergency Beacon Corp.,* 5 B.C.D. 372, 19 C.B.C. 362 (Bkrtcy.S.D.N.Y.1978).

Montmartco unsuccessfully appealed this ruling to the District Court. *In re Emergency Beacon Corp.,* CCH 67, 480 (S.D.N.Y. 1980). The District Court's affirmance of the Bankruptcy court's ruling was affirmed on appeal to the Second Circuit Court of Appeals. *In re Emergency Beacon Corp.,* 666 F.2d 754 (2d Cir.1981).

The trustee in possession and EBC's president, Stephen G. Glatzer, contend that the appeals by Montmartco were unnecessary, vexatious and in bad faith, in light of this court's ruling that it never intended to authorize the issuance of the certificate of indebtedness, and that Montmartco's continued efforts to reinstitute the effectiveness of the certificate justify the imposition of attorney's fees and costs. They reason that Montmartco should not have continued litigation over a three year period in order to prevent this court from rectifying a mistake in a submitted order which had misstated the court's actual ruling regarding the certificate of indebtedness issue.

Apart from the litigation involving the certificate of indebtedness, there were numerous other disputed matters resulting in litigation between Montmartco, the trustee in possession and the debtor's president, Stephen G. Glatzer, for which compensation is sought. One controversy concerned Glatzer's right to retain the two automobiles which were part of the buy-out agreement negotiated before Glatzer left the company in 1974.

In the spring of 1975, Montmartco had loaned $275,000 to EBC, secured by EBC's present and future accounts, contract rights, machinery, furniture, equipment, inventory and a second mortgage on EBC's real estate. The extent of Montmartco's lien became the subject of litigation in March, 1979, when the trustee in possession sought permission from this court to give Glatzer a bill of sale and/or certificates of title for the two Buicks, free and clear of all liens. The trustee's application was opposed by Montmartco, on the ground that its security interest in EBC's property, which had been granted in connection with the $275,000 loan, extended to the two Buicks held by Glatzer. This litigation was ultimately resolved by the Second Circuit Court of Appeals in favor of Glatzer. *In re Emergency Beacon Corp.,* 665 F.2d 36 (2d Cir.1981).

Another dispute involved Montmartco's motion to dismiss the reinstituted Chapter XI petition filed by the Glatzer-led debtor after the Scappatura-led debtor had consented to an adjudication in bankruptcy.

The Bankruptcy Court ruled that Montmartco's motion to dismiss was frivolously commenced, in light of the pending litigation in the Second Circuit Court of Appeals in which this court's authority to accept the reinstituted Chapter XI petition and to reject the certificate of indebtedness issued during the first Chapter XI case was already at issue. Accordingly, the Bankruptcy Court fined Montmartco $500 for the frivolous litigation. Montmartco appealed the fine to the District Court, where the fine was sustained on September 21, 1981 with an admonishment to Montmartco that an additional fine was likely to be imposed by the Second Circuit if Montmartco appealed any further.

Further litigation between the parties for which compensation is sought related to Montmartco's right to foreclose the second mortgage on the debtor's real estate. The Bankruptcy Court had directed that the mortgage payments with respect to this second mortgage should be held by the trustee in possession in an escrow money market account as security for any attorney's fees or costs that might be awarded by the Bankruptcy Court against Montmartco as a result of the instant applications. One of the payments to the escrow account allegedly bounced, prompting Montmartco's application to this court for permission to proceed with foreclosure in state court on the basis that a default had occurred under the terms of the mortgage and a stipulation between the parties concerning the payments. The trustee in possession denied that a default had occurred. This court vacated the stay so that the issue of whether a default had occurred could be determined in the state court, since the stipulation had arisen out of prior state court proceedings between the parties.

Eventually, the state court ruled that there had been no default. The trustee claims that the litigation was oppressive and vexatious, and seeks to recover attorney fees.

### The Trustee in Possession's Claims

The trustee in possession seeks reimbursement for counsel fees and expenses for the following matters:

(1) Litigation involving his objection to Montmartco's claimed administration status under the improperly obtained certificate of indebtedness: Fees, $52,500; expenses, $750.

(2) Litigation involving the two automobiles claimed by Glatzer with respect to which Montmartco asserted a lien; Fees, $6000; expenses, $100.

(3) Montmartco's frivolous motion to dismiss the second Chapter case; Fees, $6750, expenses $150.

(4) Litigation involving Montmartco's foreclosure upon the second mortgage on EBC's real estate; Fees, $7500, expenses, $300.

(5) The trustee also seeks recovery for certain disbursements and expenses as costs, in addition to requested attorney's fees.

(6) Additionally, the trustee in possession seeks reimbursement to the estate for purported losses as a result of the delay in confirmation of the debtor's plan allegedly caused by the litigation with respect to the certificate of indebtedness, which loss the trustee estimates amounts to $260,715.

That portion of the trustee in possession's application relative to reimbursement to the estate for purported losses (point # 6 above), may not be addressed in connection with his application for counsel fees because it relates to an independent cause of action on behalf of the estate that must be asserted and established independently in an adversary proceeding to recover money or property pursuant to Bankruptcy Rule 701(1). Accordingly consideration will be given solely to the application for counsel fees and costs.

### THE TRUSTEE IN POSSESSION'S COUNSEL FEES

The general rule on the subject of counsel fees in American courts was expressed by Mr. Justice White in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240 at 247, 95 S.Ct. 1612 at 1616, 44 L.Ed.2d

141 (1975) when he said that in the absence of explicit statutory authority, the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser. The *Alyeska* case does not condemn the awarding of attorney's fees to successful litigants where statutory authority is silent; it simply declares that "courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation" with respect to "a policy matter that Congress has reserved for itself." (421 U.S. at 269, 95 S.Ct. at 1627).

Apart from the statutory exception recognized in *Alyeska,* there are two other narrow exceptional areas where attorney's fees have been allowed to a prevailing litigant. One exception relates to the creation or recovery of a common fund for others as well as the plaintiff. See, e.g., *Fleischmann Corp. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). The "common fund" exception has been extended to allow the award of attorney's fees to a plaintiff whose actions benefit an identifiable class, such as the shareholders of a corporation, whether or not the benefit takes the form of a common fund. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). The rationale for this rule is that it would be inequitable to allow those benefitting from the plaintiff's efforts to retain such benefits without contributing equally to the litigation expenses. Such a result would enrich the others unjustly at the plaintiff's expense. This rule is clearly inapplicable in this case because, although it is true that EBC's shareholders would benefit from the trustee's efforts, the trustee in possession seeks to recover attorney's fees from only one entity, Montmartco, a litigant who did not benefit from the trustee's actions because it *lost* its administrative claim status by virtue of the trustee's success in obtaining a rejection of the certificate of indebtedness. Manifestly, Montmartco received no benefits from the trustee in possession's successful litigation so as to be required under a common fund

theory to contribute to his counsel fees or any that have been requested by Mr. Glatzer.

The other exception to the general principle that each party should bear the costs of its own litigation recognizes that attorney's fees may be awarded to a successful litigant "when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719 (1923). "The bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith. It may be found 'also in the conduct of the litigation.'" *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).

The concept of "bad faith" requires "clear evidence" that the claim was "entirely without color and made for reasons of harassment or delay or for other improper purposes." *Browning Debenture Holders' Committee v. Dasa Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977). Conversely, a claim is colorable, and not in bad faith when;

> " . . . it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim *might be established,* not whether such facts actually *had been established.*" *Id.*

Montmartco's conduct must be examined in the light of these principles.

### The Certificate of Indebtedness Litigation

Montmartco correctly observes that it did not submit the improper order that provided for the issuance of a certificate of indebtedness; EBC's erstwhile counsel submitted the ex parte order. When the subject of the issuance of a certificate of indebtedness was raised by counsel for the Scappatura-led debtor at the hearing in this

court, Montmartco's counsel made no specific request for its issuance. Indeed, counsel for Montmartco stressed his desire solely for an order relating to interest payments on the secured claim and the application of the proceeds from the sale of the company airplane to such interest. The court stated that if Montmartco's lien were valid, the secured creditor would be entitled to that interest. Montmartco's counsel replied: "That's all I ask." Although Montmartco did not openly argue for the issuance of the certificate of indebtedness, nor was there any evidence that Montmartco had any involvement in the preparation of the improper ex parte order, Montmartco was not an innocent and passive third party beneficiary of the Scappatura-led debtor's conduct. Stephen G. Glatzer, who had been the president of EBC, had left the company after a falling out with Rocco Scappatura, in the mistaken belief that the buy-out agreement recited in the corporate minutes, prepared by the corporate secretary, Jack Polish, would be honored. Jack Polish, who is an attorney, occupied a position of divided loyalty; he was also counsel for various corporations affiliated with Montmartco at the time he acted for EBC in connection with the pre-petition loan from Montmartco to EBC, which Montmartco later sought to elevate to a post-petition administration claim via the certificate of indebtedness. Rocco Scappatura, who had taken over as president of EBC, had pledged all of his shares of stock in EBC (a 28% interest) to Montmartco in exchange for the latter's $25,000 loan to EBC. Thus, when EBC's erstwhile counsel submitted to the court the ex parte order containing authorization for the issuance of the certificate of indebtedness that this court had previously rejected, Montmartco was then holding 28% of EBC's common stock, EBC was indebted to Montmartco for $275,000, and Jack Polish was counsel for other corporations affiliated with Montmartco. Moreover, there was no legitimate reason why any free and independent debtor would want to issue a certificate of indebtedness to a pre-petition creditor who did not offer in exchange any new consideration, such as continued financing or continued sales. The only "consideration" suggested at the hearing when the oral application was made, was Montmartco's forebearance from foreclosing. However, this court had rejected this notion because Bankruptcy Rule 11–44 automatically stayed Montmartco from taking such action. Thus, while it may have been the voice of EBC that requested the improper ex parte order, it was the hand of Montmartco that pulled the strings that caused its submission for signature.

 Although Montmartco's disclaimer of responsibility for the submission of the improper ex parte order may be treated with some skepticism, it does not follow that the record in this case supports a total disregard of the separate corporate identities. The order in question was submitted by counsel for EBC on its behalf; Montmartco was represented at the time by its own counsel. Therefore, the trustee in possession may not charge Montmartco for any time spent by the trustee in possession's attorney in connection with his original application before this court to expunge the improper ex parte order submitted by counsel for EBC. However, once this court ruled that it never intended to authorize the issuance of the certificate of indebtedness and that no rights of Montmartco would be prejudiced by modifying the order so as to expunge the authorization, any further conduct by Montmartco after this court's ruling to prevent the rectification of the mistaken authorization for the certificate of indebtedness, was in bad faith. Montmartco had no colorable claim or reasonable basis to believe that it could thereafter obtain any further benefits from an order containing an authorization for a certificate of indebtedness that the court had previously rejected in open court. Any further efforts to prevent this court's rectification of a situation that should never have been created by the parties with respect to the certificate of indebtedness was tantamount to impeding the administration of this case and was without any legal or factual support.

■ It has long been recognized that a bankruptcy court has the authority, in the exercise of its equitable jurisdiction, to compel a party to pay counsel fees to a trustee in bankruptcy when such party's tactics or conduct "constitutes an interference with the administration of the bankruptcy court and ... puts on unnecessary burden on ... the estate." *In re Swofford,* 112 F.Supp. 893, 896 (D.C.Minn.1952). See also *In re Georgia Paneling Supply Inc.,* 18 C.B.C. 447 (Bkrtcy.N.D.Ga.1978); *In re Miller,* 14 B.R. 443 (Bkrtcy.E.D.N.Y.1981). These cases are consistent with the bad faith doctrine enunciated by the United States Supreme Court in *F.D. Rich Co. v. Industrial Lumber Co.,* supra.

Because Montmartco's efforts to override the bankruptcy court's correction of the mistaken authorization of a certificate of indebtedness caused an additional burden to this estate and thwarted the process of administration of this case, it is only appropriate that Montmartco compensate the trustee in possession for his counsel fees incurred in fending off Montmartco's legally unsupportable tactics. Therefore, counsel for the trustee in possession shall submit to this court his time sheets and related documentation in support of his application for an allowance of reasonable fees in connection with the two unsuccessful appeals by Montmartco involving the certificate of indebtedness.

### The Automobile Litigation

The circumstances surrounding Montmartco's lien claim as to the two automobiles in Glatzer's possession do not support a finding of bad faith. When Glatzer left EBC in 1974, it was agreed that he was to pay EBC book value for the two cars in his possession. Glatzer gave no value to EBC for the cars until 1977, when in the context of bankruptcy court proceedings during the first EBC Chapter XI, this court ordered Glatzer to reduce his claim against EBC by the book value of these cars, in exchange for retaining them in his possession. However, back in 1975, Montmartco had obtained a security interest in various EBC property, and it contended that its lien extended to the cars, on the basis that Glatzer did not own the cars when the security interest was granted and that title to the cars still remained in EBC, because no certificates of title had ever been delivered to Glatzer. Notwithstanding the fact that Glatzer had given EBC no value for the cars until 1977, and that no certificates of title had ever been transferred to Glatzer, the Second Circuit resolved the matter in Glatzer's favor by concluding that a sale of the cars to Glatzer had actually occurred in 1974 according to the terms of the buy-out agreement, and that title had passed to Glatzer at that time, despite the non-delivery of certificates of title. Therefore, Glatzer had title to the cars prior to the time that EBC granted a security interest to Montmartco. With this passage of title, EBC had no further rights in the Buicks, and could not therefore convey a security interest in those cars to Montmartco in 1975.

■ The question that had existed regarding the certificates of title and the issue as to whether a sale had actually occurred in 1974, were legitimate assertions on Montmartco's part and constituted a reasonable basis for its belief that its lien claim against the vehicles would be upheld. Montmartco's lien claim was therefore colorable, and not in bad faith. Furthermore, it was primarily Mr. Glatzer who pursued the two appeals with regard to the cars; the trustee's involvement in the litigation was minimal. Accordingly, the trustee in possession's application for reimbursement of counsel's fees in connection with the litigation involving the two automobiles is denied.

### The Motion to Dismiss the Reinstituted Chapter XI

■ Montmartco's frivolous motion to dismiss the reinstituted Chapter XI petition, for which Montmartco was fined $500 by this court, which fine was sustained when Montmartco appealed to the District Court, calls for reimbursement of the trustee in possession for his counsel fees that were incurred in defending against the mo-

tion and the subsequent appeal. This litigation was both frivolous and vexatious. This motion was made in the face of the Bankruptcy Court's repeated statements from the bench at various hearings in this case that the filing of the reinstituted Chapter XI was approved by this court and that therefore, the court had jurisdiction over the case and had the authority to entertain the trustee in possession's objection to the certificate of indebtedness that was issued during the first Chapter XI case. Moreover, the District Court had already affirmed the Bankruptcy Court's authority to modify its previous order by disallowing the certificate of indebtedness during the reinstituted Chapter XI. The District Court could not have approved the rejection of the certificate without implicitly approving this court's authority to accept the reinstituted Chapter XI. Indeed, the certificate issue was then on appeal to the Second Circuit Court of Appeals when Montmartco again raised the issue of this court's jurisdiction to entertain the reinstituted Chapter XI petition. The trustee in possession and the debtor's estate should not be required to absorb the legal fees caused by Montmartco's motion, which was entirely devoid of color and made without any reasonable basis in fact or law. Hence, the trustee in possession's attorney shall submit his time sheets and such other documentation supporting his application for reasonable attorney's fees with respect to his legal services in connection with Montmartco's frivolous motion.

### The Mortgage Foreclosure Litigation

 The litigation involving Montmartco's foreclosure of the second mortgage on the debtor's real estate cannot be regarded as commenced or continued in bad faith, nor had Montmartco acted vexatiously, wantonly, or for oppressive reasons. Montmartco was entitled to apply for permission to resolve the mortgage default issue in state court, since it believed that a default had occurred when a mortgage payment deposited in the escrow account was returned for insufficient funds. The state court proceedings revealed that there had been some

confusion at the bank and that certain funds earmarked for the account upon which the mortgage check was drawn, had not been properly credited to that account. Once the state court ruled that there was no default, some further confusion occurred regarding the state court order, which required that payment be made to Montmartco to replace the bounced check. Montmartco interpreted the order as requiring the payment to be made directly to Montmartco, while the trustee in possession believed that payment should be made to the same escrow account that this court had previously permitted to be established for the purpose of holding the mortgage funds as security for any future attorney's fees or costs that might be awarded against Montmartco.

There were several hearings in the state court as well as in this court to clear up the confusion as to where the payment should be made, with the result that the parties were directed to adhere to this court's earlier ruling that required the mortgage payments to be paid into the escrow account.

All of Montmartco's actions in this dispute, no matter how distasteful they may have been to EBC, were intended to achieve a realization of Montmartco's valid secured interest. Montmartco's default action was legally and factually supportable. Therefore, the application by the trustee in possession for reimbursement of legal fees incurred in defending Montmartco's foreclosure litigation is denied.

### COSTS

The trustee in possession also seeks to recover certain disbursements and expenses as costs in addition to allowable attorney's fees. The only two items that may be considered, where attorney's fees are allowable, involve (1) the two appeals with respect to the certificate of indebtedness and (2) the frivolous motion to dismiss the reinstituted Chapter XI case, and the appeal from the motion's dismissal and this court's imposed fine.

■ The authority for awarding costs is found in Bankruptcy Rule 754(b), which tracks Rule 54 of the Federal Rules of Civil Procedure. The Advisory Committee Note indicates that bankruptcy courts have followed the equity practice of allowing costs to either party as a matter of discretion. As previously indicated, the trustee in possession cannot be reimbursed for counsel fees in connection with his original application *in this court* to expunge the improper ex parte order submitted by the erstwhile counsel for EBC. This is because no bad faith was imputed to Montmartco with respect to the *submission* of the order, since it had been submitted by EBC's then counsel. Therefore, just as no attorney's fees are to be charged to Montmartco in connection with that litigation, it is also not responsible for taxable costs. However, the two appeals involving the certificate of indebtedness are another matter. The trustee in possession is free to pursue any allowable costs to which he believes himself entitled, but this court will not tax any allowable costs associated with the two appeals, because the appropriate forums for such costs would be the District Court and the Court of Appeals where the trustee in possession prevailed.

■ As for Montmartco's frivolous motion to dismiss the reinstituted Chapter XI, this court has discussed earlier the circumstances which resulted in Montmartco being fined $500. This court did not at that time add on any taxable costs because the penalty was intended to reimburse the debtor's estate for any costs that may have been incurred in defeating the motion. Accordingly, no further costs will be imposed now.

## GLATZER'S COUNSEL FEES

This court has previously discussed the American Rule which ordinarily prohibits the award of counsel fees to prevailing litigants, except where there is statutory authorization, recovery or creation of a common fund, or where there has been bad faith or vexatious conduct during the course of the litigation. Mr. Glatzer, who is not an attorney, seeks recovery of counsel fees from Montmartco for his efforts in connection with the automobiles controversy and the certificate of indebtedness litigation. It must be emphasized that throughout those proceedings, Mr. Glatzer represented his own interests only; he did not represent the debtor pro se. The debtor, EBC, was more than adequately represented by Harvey S. Barr, attorney for the trustee in possession. Thus, before reaching the issue of whether circumstances exist which may bring into play one of the recognized exceptions to the American rule, a more fundamental question is whether under any circumstances a pro se litigant may recover attorney fees for services rendered to himself.

### Statutory Authorization for Fees

It appears that the majority of federal cases allowing a non-lawyer pro se litigant reimbursement for attorney's fees have been Freedom of Information Act (FOIA) cases, which are governed by a statutory provision, 5 U.S.C. § 552(a)(4)(E), that specifically allows the assessment of attorney's fees for a prevailing complainant. However, the FOIA cases in which non-attorney pro se litigants have recovered attorney's fees have been confined, with one exception, to the D.C. District and Circuit courts. See *Cox v. United States Dept. of Justice,* 601 F.2d 1 (D.C.Cir.1979); *Jones v. United States Secret Service,* 81 F.R.D. 700 (D.D.C. 1979); *Holly v. Acree,* 72 F.R.D. 115 (D.D.C. 1976), aff'd sub nom., *Holly v. Chasen,* 569 F.2d 160 (D.C.Cir.1977); *Crooker v. United States Department of Treasury,* 663 F.2d 140 (D.C.Cir.1980); *Marschner v. Dept. of State,* 470 F.Supp. 196 (D.Conn.1979). [See also *Cuneo v. Rumsfeld,* 553 F.2d 1360 (D.C. Cir.1977) (fees allowed to *attorney* representing self).] The D.C. district court has also allowed attorney's fees for a pro se non-attorney litigant in the context of a Copyright Act case, governed by another statutory provision, 17 U.S.C. § 505. See *Quinto v. Legal Times of Washington, Inc.,* 511 F.Supp. 579 (D.D.C.1981).

The overwhelming majority of the other U.S. Circuit courts have refused to award

attorney's fees to a party who did not use the services of an attorney during the litigation. These cases all involved statutory provisions which authorize the assessment of attorney's fees. See, *Lovell v. Snow,* 637 F.2d 170 (1st Cir.1981) (Civil Rights Attorney's Fees Awards Act); *Crooker v. United States Dept. of Justice,* 632 F.2d 916 (1st Cir.1980) (FOIA); *Cunningham v. F.B.I.,* 664 F.2d 383 (3d Cir.1981) (FOIA); *Pitts v. Vaughn,* 679 F.2d 311 (3d Cir.1982) (Civil Rights Attorney's Fees Awards Act); *Barrett v. Bureau of Customs,* 651 F.2d 1087 (5th Cir.1981) cert. den., 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982) (Privacy Act); *Cofield v. City of Atlanta,* 648 F.2d 986 (5th Cir.1981) (Civil Rights Attorney's Fees Awards Act); *Wright v. Crowell,* 674 F.2d 521 (6th Cir.1982) (Civil Rights Attorney's Fees Awards Act); *Davis v. Parratt,* 608 F.2d 717 (8th Cir.1979) (Civil Rights Attorney's Fees Awards Act); *Hannon v. Security National Bank,* 537 F.2d 327 (9th Cir.1976) (Truth in Lending Act); *Burke v. United States Dept. of Justice,* 559 F.2d 1182 (10th Cir.1977) (FOIA); *Clarkson v. I.R.S.,* 678 F.2d 1368 (11th Cir.1982) (FOIA and Privacy Act). Although these circuit courts reached the same conclusion, the reasons for declining to award fees varied. Some reasoned that since the litigant was a non-lawyer, no attorney's fees had been incurred (*Barrett; Clarkson;* and *Crooker v. U.S. Dept. of Justice,* supra), or that no attorney's services had been provided (*Hannon,* supra). The court in *Crooker v. U.S. Dept. of Justice,* supra, was clearly troubled by the prospect of awarding counsel fees to a layperson, explaining that there is no "meaningful standard for calculating the amount of such an award." 632 F.2d at 921.

By making the choice to represent himself, a pro se litigant is not penalized by the denial of fees on the ground that he did not retain an attorney. On the contrary, had an attorney been retained, the recovered fees would inure to such attorney, not the pro se litigant. In either situation, the pro se receives nothing for himself. As the court stated in *Cunningham v. F.B.I.,* supra,

"Although pro se litigants are likely to incur non-monetary costs that might serve as the basis for compensation, the same may be said for litigants who retain counsel. The latter group must still devote time and energy to their cases, yet the statute does not compensate them for any more than the actual attorney fees and litigation costs incurred." 664 F.2d at 386.

The court also observed that self representation does not foster the detached and objective perspective that an attorney can provide as a check against unnecessary or groundless litigation. See also *Barrett,* supra; *White v. Arlen Realty & Development Corp.,* 614 F.2d 387 (4th Cir.1980), cert. den., 447 U.S. 923, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980) [attorney's fees not allowed for attorney representing himself]. Moreover, the *Cunningham* court pointed out that there are valuation problems in trying to calculate compensation for a non-lawyer pro se litigant, since there is no accepted market value or baseline cost to use which would help to guard against arbitrary results. Thus, the *Cunningham* court concluded that paying attorney's fees to pro se litigants would stretch the meaning of attorney's fees "beyond its natural domain." 664 F.2d at 386. In the *Cofield* case, supra, the court explained that a statutory provision allowing for fees "is not to compensate a worthy advocate but to enable and encourage a wronged person to retain a lawyer." 648 F.2d 986. See also, *Davis v. Parratt,* supra.

Somewhere in between are those courts which have allowed attorney's fee awards pursuant to statutory authorization, for a litigant represented by an attorney who does not charge the litigant for services rendered. *Sellers v. Wollman,* 510 F.2d 119 (5th Cir.1975); *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir.1977), cert. den. 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Mid-Hudson Legal Services, Inc. v. G. & U., Inc.,* 578 F.2d 34 (2d Cir.1978). In these cases, although no attorney's fees were "incurred", the courts awarded fees directly to the legal aid service organizations whose attorneys had successfully represented the

plaintiffs without charge. This result is consistent with the fact that an attorney had represented the litigant and had provided attorney services to the litigant, although without exacting a fee. This situation is distinguishable from the present case where there is neither an attorney nor a fee which can be encompassed by the term "attorney's fees".

As for the state of the law in the Second Circuit, the only case decided concerning attorney's fees for a pro se reached a somewhat arcane conclusion. *In Crooker v. U.S. Dept. of the Treasury,* 634 F.2d 48 (2d Cir. 1980) the court held that a federal prisoner who had appeared pro se in a FOIA action was ineligible for an attorney's fees award because the FOIA was not enacted to "create a cottage industry for federal prisoners", *Id.* at 49, and he had made no showing that prosecuting his lawsuit caused him to divert any of his time from "income-producing activity." *Id.* at 49. However, the court expressed uncertainty as to whether Congress had intended the FOIA statutory language to make attorney's fees available only to licensed members of the bar or also to pro se litigants acting as their own counsel. Therefore, it would be difficult to infer that the Second Circuit would necessarily allow a non-lawyer pro se who was not a federal prisoner to receive attorney's fees, even with evidence as to time diverted from income producing activity.

Furthermore, it is certainly clear that the Second Circuit was addressing the issue within the context of a FOIA case, where there was statutory authority for awarding attorney's fees. Even if the assumption were made that the Second Circuit would grant fees to a non-prisoner, non-attorney pro se who produced evidence of time diverted from "income-producing activity", it does not follow that such a holding would apply to the instant case where there is no underlying statutory ground for awarding attorney's fees.

Other than the Second Circuit decision, there are two district court cases in the Second Circuit which have addressed the pro se attorney's fees issue and reached opposite results. In each case there was statutory authorization for awarding attorney's fees. In *Smith v. United Press International,* 8 EPD ¶9512 (S.D.N.Y.1974) a non-attorney who appeared pro se sought attorney's fees in connection with a Title VII discrimination suit under a governing statute providing for attorney's fees. The court stated that "a pro se plaintiff cannot recover counsel fees, even statutory counsel fees, in connection with an action ...." *Id.* at p. 5286. Cf. *Marschner v. Dept. of State,* 470 F.Supp. 196 (D.Conn.1979) [FOIA case where the court allowed pro se attorney's fees calculated at the requested rate of $2.65 per hour].

At this juncture it is abundantly clear that except for the D.C. Circuit, all of the other Circuits which have ruled on a pro se non-attorney request for attorney's fees compensation, have addressed the issue only within the context where there was some underlying statutory basis for awarding attorney's fees, and have unanimously held that a non-attorney who represents himself cannot receive compensation for attorney's fees. It cannot be over emphasized that in the instant case there is no statutory authorization for fees to bring the controversy within that narrow exception to the American Rule. Indeed, even if all of the foregoing Circuit decisions unanimously approved pro se counsel fees for non-attorneys pursuant to the various statutes involved in these cases, the rulings would not be instructive in the present situation, where Mr. Glatzer is requesting attorney fees without any statutory authorization to ease him over the American Rule hurdle.

### The Certificate Case—Bad Faith

Although this court has ruled that no bad faith pervaded the automobile litigation, bad faith was found to be present in the certificate of indebtedness case. Accordingly, this court has held that the trustee in possession may recover fees for his attorney. Mr. Glatzer also requests attorney's fees for the certificate case, but such request is denied. Besides the lack of case authority supporting an award of counsel

fees to a pro se on the ground of bad faith, it must also be pointed out that the debtor, EBC, the entity directly affected by the certificate, was adequately represented by trustee's counsel. Mr. Glatzer had standing to participate as an intervenor based on his shareholder status, to represent his own interests as a shareholder. However, the trustee's counsel amply protected the debtor's interests, and although Mr. Glatzer may have voluntarily offered his time and assistance to trustee's counsel during the course of the certificate litigation, there are no grounds for additionally awarding attorney's fees to Mr. Glatzer as an intervenor pro se. See quotation from *Cunningham v. F.B.I.* supra at page 24 above.

### The Purported Stipulation in the Automobiles Litigation

Mr. Glatzer has referred to several transcripts of proceedings before this court where statements were made by the court with regard to awarding attorney's fees to the prevailing party after the Second Circuit ruled on the issue of ownership of the two Buick automobiles. With the appeal of this court's decision with respect to Montmartco's lien on the cars still pending in the Court of Appeals after affirmance in the district court, this court admonished Glatzer during the April 9, 1981 hearing that he ought to settle the matter with Montmartco since the cost of appealing clearly outweighed the value of the two Buicks which were concededly past their prime. Glatzer had proposed a settlement of relinquishing his claim to the more valuable car which proved unacceptable to Montmartco. Rather than dropping the matter, Glatzer was prepared to follow through with the appeal to the Second Circuit in the face of warnings from this court that he would be proceeding at great risk, in light of the district court affirmance. With the understanding that this court was prepared to award substantial attorney's fees, Mr. Glatzer accepted the risk of being charged with Montmartco's attorney's fees, and prosecuted his appeal. Quite unexpectedly, he prevailed. [*In re Emergency Beacon Corp.,* 665 F.2d 36 (2d Cir.1981)]. Therefore, Mr. Glatzer re-

quests attorney's fees as the prevailing litigant and finds support for his application in statements made by the court at various hearings which he characterizes as stipulations, and which he contends, can serve as the basis for this court to grant his application for attorney's fees.

The essence of a stipulation is an agreement between *the parties* as to which there is mutual assent. See, *U.S. v. Harris,* 542 F.2d 1283 (7th Cir.1976), cert. den. sub nom. *Clay v. U.S.,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); *U.S. v. Three Winchester 30–30 Caliber Lever Action Carbines,* 504 F.2d 1288 (7th Cir.1974). This court finds no basis in the record to support the proposition that there were formal stipulations made on the record between *Montmartco and Glatzer* with regard to agreeing to pay each other attorney's fees, conditioned on who prevailed on appeal. At most, the *court* made certain remarks which were meant to advise the parties of the court's position with regard to the award of fees. There was no independent agreement between the parties concerning fees which was then judicially sanctioned. Even if it could be said that the parties did stipulate to the award of attorney's fees, this court would not be bound to accept as controlling the parties stipulations concerning a question of law, particularly when the stipulations are contrary to the prevailing law. *Swift & Co. v. Hocking Valley R. Co.,* 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722 (1917); *King v. U.S.,* 641 F.2d 253 (5th Cir.1981); *U.S. v. Lisk,* 522 F.2d 228 (7th Cir.1975), cert. den., 423 U.S. 1078, 96 S.Ct. 865, 47 L.Ed.2d 89 (1976), appeal after remand, 559 F.2d 1108 (7th Cir.1977); *United States v. Waterman Steamship Corp.,* 397 F.2d 577 (5th Cir.1968); *Los Angeles Shipbuilding & Drydock Corp. v. U.S.,* 289 F.2d 222 (9th Cir.1961). Since entitlement to attorney's fees is a question of law, see *Kessler v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 531 F.2d 248, 255 n. 30 (5th Cir.1976), and *Equitable Life Assurance Soc. of U.S. v. MacGill,* 551 F.2d 978, 983 (5th Cir.1977), reh. den, 554 F.2d 1065 (5th Cir.1977), any purported stipulation between the parties

concerning entitlement to fees would not bind this court.

This court has discussed at length the rare instances under which attorney's fees have been awarded to pro se litigants and concludes that there is no legal basis for removing Mr. Glatzer's application from the general rule that attorney's fees should not be awarded to pro se litigants. Therefore, Mr. Glatzer's application for attorney's fees is denied.

## COUNSEL FEES UNDER 28 U.S.C. 1927

■ The trustee in possession and Stephen G. Glatzer have made reference to 28 U.S.C. § 1927, which authorizes compensation for excessive costs, including attorney's fees, from any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . ." This language was adopted to be effective September 12, 1980 and was in response to the Supreme Court's earlier decision in *Roadway Express Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), which held that 28 U.S.C. § 1927, as it then read, did not authorize the imposition of counsel fees as costs for which attorneys could be personally liable for vexatiously extending court proceedings. This statute "is penal in nature . . . and should be strictly construed . . . ." *United States v. Ross,* 535 F.2d 346, 350 (6th Cir.1976). Accordingly, it may not be applied retroactively to conduct complained of prior to its amendment, effective September 12, 1980. See *In re Silverman,* 13 B.R. 270 at 273 (Bkrtcy.S.D.N.Y.1981).

As to the two appeals concerning the certificate of indebtedness, the District Court phase, which was decided on May 2, 1980, occurred prior to September 12, 1980. The attorney who handled that aspect for Montmartco, and who filed the notice of appeal to the Second Circuit Court of Appeals, was not the same attorney who appeared for Montmartco and who prosecuted the Second Circuit appeal. A substitution of attorneys was filed with this court on August 11, 1980. Thus, the strategy and direction for going forward with the two appeals to prevent the rectification of a mistake regarding the improper issuance of the certificate of indebtedness was formulated and activated by Montmartco long before its present counsel came into this case. Therefore, there is no justification for imposing any portion of the allowable attorney's fees on Montmartco's present counsel in so far as the certificate of indebtedness issue is concerned. Montmartco should shoulder full responsibility for the allowance of these attorney's fees.

The Glatzer-led debtor filed a second petition on April 29, 1977 reinstating the Chapter XI case. Montmartco moved to dismiss this petition on December 23, 1980, long after this court had repeatedly stated that the reinstatement had been accepted and approved by this court because there was a likelihood of reorganization of the debtor if Montmartco's secured claim were not allowable in full, as the Glatzer-led debtor contended. Montmartco's motion to dismiss was denied by this court as frivolous, for which a $500 fine was imposed on February 11, 1981. The District Court affirmed the dismissal and the fine, stating from the bench on September 18, 1981:

"I am sorely tempted to add additional fees on this appeal. However, I'm not going to do it, but if there is an appeal to the Court of Appeals I would be very surprised if they did not assess substantial fees on any further appeals of this matter which, so far as I'm concerned, is lacking in any substantive merit whatever, and I believe is taken for purposes of further prolonging these existing proceedings."

■ All of the activities with respect to the frivolous motion to dismiss occurred after September 12, 1980, the effective date of the amendment of 28 U.S.C. § 1927. However, counsel for Montmartco was then relatively new to this case when he commenced the motion to dismiss on December 23, 1980. The substitution of attorneys was filed on August 11, 1980; the case had been pending since February 18, 1976. Much had transpired since its inception, during which time Montmartco had employed at least three other law firms to handle different

aspects in this case. When the District Court admonished counsel not to proceed further because his position "was lacking in any substantive merit whatever", counsel for Montmartco complied and discontinued any further efforts to dismiss the reinstituted Chapter XI case. In view of the fact that this court will permit the trustee in possession to recover his attorney's fees from the escrowed mortgage funds belonging to Montmartco, the party primarily responsible for the strategy in this case, there is no reason why Montmartco's present counsel should be called upon to assume personally any portion of the award and thereby relieve Montmartco of its ultimate responsibility.

## CONCLUSIONS OF LAW

1. The trustee in possession's claim for reimbursement to the estate for purported losses as a result of the delay in confirmation of the debtor's plan allegedly caused by the litigation with respect to the certificate of indebtedness is denied without prejudice to any claim that might be asserted independently in an adversary proceeding pursuant to Bankruptcy Rule 701(1).

2. The trustee in possession's claim for attorney's fees concerning his objection to Montmartco's administration status under the improperly claimed certificate of indebtedness is allowed to the extent of the reasonable legal services performed in connection with the appeals to the District Court and to the Second Circuit Court of Appeals.

3. The trustee in possession's claim for attorney's fees for the litigation involving the two automobiles with respect to which Montmartco asserted a lien is denied.

4. The trustee in possession is entitled to attorney's fees for defending in this court and on appeal Montmartco's frivolous motion to dismiss the reinstated Chapter XI case. His request for costs incurred in that litigation is denied.

5. The trustee in possession's request to recover for attorney's fees with respect to Montmartco's foreclosure of the second mortgage on the debtor's real estate is denied.

6. The trustee in possession's request for the recovery of certain disbursements and expenses incurred during the litigation referred to in number two above is denied without prejudice to any application that might be made to the appellate courts involved.

7. Stephen G. Glatzer's request for attorney's fees in his capacity as a pro se non-attorney litigant in the disputes involving the automobiles and certificate of indebtedness is denied. His request for costs is also denied without prejudice to any application that might be made to the appellate courts involved.

8. Counsel for Montmartco shall not be personally liable pursuant to 28 U.S.C. § 1927 for any portion of the allowable attorney's fees for which Montmartco has been found liable.

SUBMIT ORDER on notice.