**In re NICHOLSON INDUSTRIES, INC., Debtor.**

**The TOLEDO TRUST COMPANY, Plaintiff,**

**v.**

**H. Buswell ROBERTS, Jr., Trustee and France Stone Co., Defendants.**

**Bankruptcy No. 85–00049.
Adv. No. 85–0221.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Feb. 12, 1987.

---

H. Buswell Roberts, Toledo, Ohio, Trustee.

Thomas J. Schank, Toledo, Ohio, for trustee.

Laurie J. Pangle, Brian J. McKnight, Toledo, Ohio, for Toledo Trust.

Louis J. Hattner, Toledo, Ohio, for France Stone.

## OPINION AND ORDER ALLOWING FULL PAYMENT OF SECURED CLAIM

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for trial upon the complaint of The Toledo Trust Company against H. Buswell Roberts, Jr., trustee of the Debtor, Nicholson Industries, Inc., for a turn over order of approximately $110,-000 plus interest. This sum represents the balance of the amount claimed to be due Toledo Trust after the trustee's distribution to it of $1,400,147.24 on its secured claim of $1,510,518.90. Toledo Trust had a perfected security interest on certain machinery, equipment and inventory sold by the trustee at public auction for $1,473,-000.00 ($213,000 of which represented the amount attributed to that property on which Toledo Trust had no lien). Toledo Trust also had a perfected security interest upon the accounts receivable collected by the trustee of approximately $327,000.00

Defendant, France Stone Company, as guarantor of Debtor's note, held a second lien upon the same property and filed its answer and cross claim against the trustee for a similar order.

Upon consideration of the evidence adduced at trial and the stipulations and oral arguments of the parties, the court finds that plaintiff's complaint is well taken and that the trustee should pay plaintiff the amount of $126,976.47 in full satisfaction of its secured claim.

### FACTS

The Toledo Trust Company, France Stone Company and the trustee stipulated to the following facts:

1. The Debtor, Nicholson Industries Corp., et al., filed its petition for relief in this case on January 14, 1985. Subsequently, the Trustee and The Toledo Trust Company entered into a stipulation to facilitate the sale of certain assets of the Debtor in which The Toledo Trust Company held a valid security interest. The Trustee held the sale and proceeds in the gross amount of $1,473,000.00 were realized from the sale. Of these proceeds, $213,000.00 is attributed to equipment to which the security interest of The Toledo Trust Company did not attach. On June 7, 1985, $1,400,147.24 was disbursed to The Toledo Trust Company.

2. As of June 7, 1985, the claim of The Toledo Trust Company was $1,510,-518.90. At that time, The Toledo Trust Company had a valid security interest in all of the assets, including the accounts receivable, of the Debtor except for certain crane carriers and a Fruehaft trailer. France Stone Company also had a valid security interest in all of the assets, including the accounts receivable, of Debtor, except for the crane carriers and

Fruehaft Trailer, second only to the interest of The Toledo Trust Company.

4. [sic] The difference between the amount of The Toledo Trust Company's claim and the amount disbursed to it as of June 7, 1985, is $110,806.87. Accruing interest at the note rate to this amount yields a total of $126,038.99, as of January 2, 1987, and a per diem accrual rate of $22.77.

Trustee, on April 1, 1985, filed a notice of intent to sell property, free and clear of all liens. The property was subsequently sold on April 15, 1985, for $1,473,000.00. The amount realized from this sale was less than the amount of Toledo Trust's secured claim. As a result of this deficiency, Toledo Trust, on April 25, 1985, filed a motion for abandonment and relief from stay. On May 21, 1985, a hearing was held on the motion of Toledo Trust. At that hearing, the parties indicated to the court that they would enter into a stipulation in order to facilitate the closing of that sale and the distribution of those proceeds. On June 7, 1985, the closing of that sale took place. On June 11, 1985, the stipulation in settlement of Toledo Trust's motion for abandonment and relief from stay, dated April 25, 1985, was filed with this court, and provided in pertinent part:

1. The Toledo Trust Company is the holder of a valid security interest in all of the assets of Debtor ... and is entitled to be paid the full amount of its claim subject to paragraph 2 of this Stipulation.

2. [T]he Trustee hereby consents to relief from the automatic stay and the abandonment of the proceeds of sale of the assets of the Debtor and the proceeds of the collection of the accounts receivable pledged as security to The Toledo Trust Company subject to a pro rata charge for costs and expenses, including the Trustee's compensation.

After receipt of the sale proceeds, Toledo Trust filed the instant complaint. It subsequently filed a motion for order compelling trustee to abandon property of the estate, in accordance with the above stipulation. It is Toledo Trust's position that while they agreed to pay a charge for costs and expenses of the sale as well as the trustee's compensation, these costs should be deducted from the proceeds of sale without reduction of its claim. They contend that they did not intend to waive their lien to the accounts receivable as they held a perfected security interest in those accounts and that the stipulation clearly provides for abandonment to the bank. The trustee, however, contends that by signing the above stipulation, Toledo Trust agreed to reduce its claim in the amount of the costs and expenses of sale, including the trustee's fees and has no further rights to the accounts receivable.

Toledo Trust's motion for order compelling trustee to abandon property of the estate, evidencing its interpretation of the stipulation, was consolidated with the adversary complaint at trial.

## DISCUSSION

The issue in this case requires analysis of the June 11, 1985 stipulation. A stipulation represents an agreement between the parties to which there has been mutual assent. *In Re Emergency Beacon Corp.*, 27 B.R. 757 (Bkrtcy.S.D.N.Y.1983). A stipulation in fact represents a contract between the parties and, as such, is subject to the general principles governing construction of a contract. *In Re Neuman*, 55 B.R. 702 (S.D.N.Y.1985). *See also In Re Bolton Hall Nursing Home, Inc.*, 31 B.R. 765 (Bkrtcy.D.Mass.1983). Elements of a binding contract, as well as a stipulation, include, among other factors, a meeting of the minds. *See Rice v. Glad Hands, Inc.*, 750 F.2d 434 (5th Cir.1985) (stipulation binds parties only to terms actually agreed on). Additionally, to be enforceable, the contract must be definite and certain. *General Motors Corp. v. Keener Motors*, 194 F.2d 669 (6th Cir.1952).

Enforcement of the stipulation in issue is questionable when viewed in light of the testimony and correspondence. Plaintiff's witness testified that it was his understanding that while plaintiff would

bear part of the burden imposed by expenses of the sale, including trustee fees, plaintiff had not agreed to a reduction of its claim in that amount. Defendant trustee testified that he understood the stipulation to allow a reduction of plaintiff's claim in the amount of the costs and expenses associated with the sale. Obviously, the parties did not have a meeting of the minds. The parties did not actually agree upon the terms in the stipulation. The stipulation is not, then, binding and enforceable.

Interpretation of the stipulation is primarily a matter of ascertaining the intent of the parties, which is a question of fact to be determined by the court. *WO Co. v. Benjamin Franklin Corp.*, 562 F.2d 1339 (1st Cir.1977). Based upon the evidence presented, this court finds that the parties had different intentions regarding the effect of the stipulation. The stipulation is, then, unenforceable.

A contract may be formed through correspondence. In such a situation, the parties intent and the determination of whether there was a meeting of the minds, may be gathered from review of the correspondence as a whole. *Zehr v. Wardall*, 134 F.2d 805 (6th Cir.1943).

Upon review of the correspondence, submitted through stipulation of the parties, it is, nevertheless, evident that the parties maintained different intentions and never had a "meeting of the minds." A letter to defendant trustee from plaintiff, dated June 10, 1985, three days after receipt of its share of the sale proceeds, indicates that plaintiff offered to take control of collection of the accounts receivable in order to satisfy its deficiency balance of $110,371.66. Defendant trustee responded to this correspondence on June 18, 1985, indicating that he considered plaintiff's claim paid in full as a result of the stipulation. Subsequent letters between the parties indicated their continuing positions and the necessity of judicial determination of the issue. Thus, considering the stipulation in light of not only the testimony at trial, but also the correspondence between the parties, it is obvious that the parties never mutually assented to the terms of the stipulation. The stipulation is, then, a nullity and unenforceable.

Toledo Trust, in its brief and closing argument cited *In Re West Post Road Properties Corp.*, 44 B.R. 244 (Bkrtcy.S.D.N.Y. 1984). In that case an oversecured creditor entered into a stipulation with the trustee regarding distribution of proceeds from a sale. Contrary to the instant case, the stipulation in the *West Post* case was clear and unambiguous detailing the manner of distribution of the sale proceeds. The court indicated that:

> The two factors that must be considered before charging a secured claim holder with preservation and disposition expenses are whether the secured claim holder primarily benefits from the expenses incurred and whether such creditor caused or consented to such expenses.

*Id.* at 247. As evidenced by the testimony at trial and the correspondence between the parties, Toledo Trust did not consent to a charge against its claim for the expenses. While they would permit a deduction from the sale proceeds for the cost of the sale, they would not consent to a reduction of its claim in that amount.

■ Because the stipulation, upon which both parties relied, is found to be unenforceable, disposition of the sale proceeds and of the subsequently collected accounts receivable must be analyzed.

Pursuant to the stipulation of facts submitted by the parties, plaintiff has a valid security interest in all of Debtor's assets, including the accounts receivable, except for certain enumerated items. Stipulation of Facts at 1–2. All the assets were sold at public sale and plaintiff was paid from the proceeds, leaving a deficiency of their claim in the amount of $110,371.66. The accounts receivable were not a part of that sale and defendant trustee has continued to collect these. He has, to date, collected approximately $327,000.

11 U.S.C. § 506(a) states in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has

an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property....

The estate has an interest in the previously collected accounts receivable in the approximate amount of $300,000. Plaintiff has a valid and properly perfected security interest in these accounts. Plaintiff's deficiency on its claim is $110,371.66. Thus, the value of plaintiff's interest in the accounts receivable represents a secured claim. Plaintiff is entitled to satisfaction of its deficiency through the amounts collected from the accounts receivable.

11 U.S.C. § 506(b) permits interest to a holder of a claim secured by property the value of which exceeds the amount of the claim. The accounts receivable exceed plaintiff's claim as evidenced by collection ·to date of about $327,000. The parties stipulated that as of January 2, 1987, plaintiff's claim was $126,038.99, with per diem interest of $22.77. Stipulation of Facts at 2. Allowing interest on plaintiff's claim, then, in accordance with § 506(b) results in a deficiency due plaintiff of $126,930.93.

11 U.S.C. § 506(c) permits the trustee to ... recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim.

Additionally,

the cases decided under the 1978 code have generally disallowed recovery against the. secured claimant under § 506(c) when disposition of the property produced sufficient funds to pay such costs and expenses and the secured claim in full.

3 *Collier on Bankruptcy* § 506.06 at 506–63 (15th ed. 1986) (citations omitted).

Thus, while the trustee is entitled to recover his fees and costs and expenses associated with collection of the accounts receivable, plaintiff is entitled to payment in full of its secured claim as collection of the accounts receivable produced sufficient funds to satisfy both. Additionally, there will still remain sufficient funds to permit a dividend to unsecured creditors. That is, monies exist to permit payment to Toledo Trust in full, payment for the trustee's statutory fees, payment for costs and expenses of administration, and a dividend for the unsecured creditors.

In light of the discussion above, plaintiff's claim will be paid in full. Plaintiff will, then, have no further cause of action against defendant France Stone as guarantor of Debtor's note. The court finds, then, that defendant France Stone's cross claim against defendant trustee should be dismissed.

For the foregoing reasons, it is therefore

ORDERED that defendant trustee pay to plaintiff Toledo Trust Company, within ten days of the date of this order, the sum of $126,976.47, in full satisfaction of its secured claim. It is further

ORDERED that defendant France Stone Company's cross claim against defendant trustee be, and it hereby is, dismissed.