**In re Pedro ARZOLA & Carmen N. Rivera Santos, D/B/A "El Botellon", Debtors.**

**Bankruptcy No. B–80–00491 (B).**

United States Bankruptcy Court, D. Puerto Rico.

June 15, 1981.

## ORDER

W. H. BECKERLEG, Bankruptcy Judge.

Carlos Ortíz Meléndez, landlord of premises occupied by debtor and taken over by trustee, moved for compensation for damages to the premises and for a turn over of items removed. By order of April 27, 1981, 11 B.R. 762, we granted damages of $900 and directed the trustee to pay certain administrative rentals; we are advised that the trustee has not yet done so; our order of April 27, 1981 is long final and the trustee has neither appealed nor asked for reconsideration; we see no reason for his delay in payment and he is instructed to forthwith comply with our order.

However, before us today was an application of landlord for compensation by way of attorneys fees to be imposed against the trustee for temerity in this matter.

Under the practice in the federal courts, in general, attorneys' fees are not taxable as costs against the losing party unless the action was brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons. *Stacy v. Williams*, 50 F.R.D. 52 (N.D.Miss., 1970). The laws of Puerto Rico authorize the assessment of attorneys fees in a case of temerity. *Maryland Casualty v. San Juan Racing Assoc.*, 83 P.R.R. 538 (1961); and such fees have been assessed by the U. S. District Court in cases where temerity existed, and such assessment have been upheld by the Court of Appeals. *City Bank of Honolulu v. Rivera Dávila*, 438 F.2d 1367 (CCA–1, 1971); *Fireman's Fund Insurance Co. v. Santoro*, 376 F.2d 157 (CCA–1, 1967); *Pan American World Airways, Inc. v. Ramos*, 357 F.2d 341 (CCA–1, 1966).

F.R.C.P. 54 applies in bankruptcy cases except for 54(d), but as to 54(d) we have our own equivalent in Bankruptcy Rule 754(b) which is essentially to the same effect and leaves to the court's discretion the taxing of costs. Attorneys fees for temerity are assessed as costs under F.R. C.P. 54(d) and thus may be assessed under Bankruptcy Rule 754(b).

Juan Castañer Vélez, Hato Rey, P.R., for landlord.

José Raúl Cancio Bigas, San Juan, P.R., for trustee.

■ As stated above, in the federal system, the general rule is that attorneys fees cannot be taxed as costs against the losing party. *Fleischmann Distilling Corp. v. Maier Brewing Corp.*, 386 U.S. 714, 87 S.ct. 1404, 18 L.Ed.2d 475 (1967). There are three exceptions to this general rule: *first*, in the event of a valid contractual basis fees may be allowed, *U. S. v. Standard Oil Co.*, 156 F.2d 312 (CCA–9, 1946); *second*, under a controlling statute or rule of the court, and *third*, under the court's equitable power.

■ We find no contractual basis between creditor and trustee and although such a basis existed between debtor and creditor, we do not find that creditor made a claim for fees thereunder initially and we are not about to permit such a claim be made after the controversy has been tried and resolved.

Statutory authority for professional fees are found in Section 327, 328, 329, 330, and 503; but none of these sections authorize fees for the attorney of an individual creditor in a matter such as the present. Rule authority exists under Rule 754(b), but this rule is discretional and does not support a claim as a matter of right; some basis must exist to justify the exercise of the court's discretion.

Creditor's claim must therefore be directed to the court's equity power, and here, as indicated above, costs in the form of attorneys fees have been awarded when the action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons. See *Rolax v. Atlantic Coast Line R. Co.*, 186 F.2d 473, 481 (CCA–4, 1951). These principles have been applied in bankruptcy cases. *In re Swartz*, 130 F.2d 229 (CCA–7, 1942). This exception has come to be known as the *bad faith* exception. The underlying rationale for imposing a fee on the losing party is punitive and the element that triggers the imposition of the penalty or shifting of the fee, is the existence of the bad faith on the part

of the litigant. *U. S. v. Standard Oil of Calif.*, 603 F.2d 100 (CCA–9, 1979). *In re Boston & Providence Railroad Corporation*, 501 F.2d 545, 549 (CCA–1, 1974).

The idea that each litigant should bear his own legal fees and are not ordinarily recoverable from the losing party is known as the "American Rule" [1] and is well established in the federal system. *Fleishman Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), *F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 126, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703 (1974). The rule has been criticized (see footnote 15 to the *F. D. Rich* decision, *supra*) but remains the general rule alleviated only by the exceptions mentioned earlier, and this exception is limited and applied only in exceptional cases. *Fleishman Distilling Corp. v. Maier Brewing Co.*, supra 386 U.S. at 717, 87 S.Ct. at 1406; 6 *Moore's Federal Practice*, 2nd Ed., # 54.-77(2), pp. 1709–1711.

Turning now to the specifics of the present case, we have a landlord whose premises are used by a trustee, who resorts to this court to have the trustee vacate, and who resorts to this court to collect from the trustee the administrative rent and the damages caused when the debtor's furniture and fixtures are sold by the trustee and removed from the premises. The trustee was appointed on Oct. 28, 1980, he had the assets inventoried and appraised; a sale was held Nov. 26, 1980, and was confirmed Dec. 3, 1980, another sale was held January 27, 1981 and confirmed Feb. 4, 1981, and the trustee deposited the keys with this court and they were picked up by the landlord on March 31, 1981, a month later.

The trustee and the landlord were urged to resolve their differences; they were unable to do so despite urging by this court and it was necessary to resolve them by trial. The trustee's position, from the court's personal knowledge of same has been what may be characterized as "hard nosed", that is, the trustee during negotia-

---

1. As distinguished from the "English Rule" where counsel fees are awarded to successful plaintiffs in litigation.

tions took the position nothing was owed and moved from that position but slightly. As the landlord was unwilling to forego his claim, or to accept the minor concessions of the trustee, a hearing on the merits was necessary and was held resulting in the aforementioned order of April 27, 1981. As a result of that hearing our order of April 27, 1981 was entered; in said order we allowed some of the landlord's claims of damages and rent and denied others.

We expect a trustee to expeditiously liquidate the assets of an estate and to return leased property, where the lease is not assumed, to the landlord as soon as feasible ... efficient and economic liquidation demands no less. Furthermore, we expect a trustee as an officer of this court to deport and guide himself by standards higher than we would require of one who is not. However, and overriding these obligations of the trustee are those imposed by the Bankruptcy Code: the trustee is the representative of the estate, Sec. 323(a); he must examine and object to improper claims, liquidate the estate, and investigate the debtor, Sec. 704. And, by definition, he is disinterested and competent, Sec. 321. For this he is compensated at the handsome rates set forth under Sec. 326, which translated into the realities of this case means that the trustee monetary interest in the entire proceeds of the present case will average out at about 3%[2]; as the trustee's commission is based on the total amount handled and disbursed by him, it is economically immaterial to him whether the landlord receives more or less.

The trustee is therefore unlike the usual participant in litigation. Bankruptcy Judge Alexander L. Paskay, who probably knows more about trustee than anyone else, has said in his *Handbook for Trustees*:

"The trustee is the statutory representative of all the creditors and he holds the assets of the estate in trust for their benefit. He represents all the creditors, not only the majority, however great that may be. He must be an impartial administrator whose duty to is to administer the estate for the benefit of each and every one of the creditors.

"... He is duly bound to work in harmony with the creditors and follow their reasonable suggestions, but he is not subject to their dictation and should follow his own best judgment."

The "bad faith" exception to the so called "American" rule of assessment of attorneys fees is assuredly applicable to trustees, but because of the trustee special posture as a non-interested litigant and because the "bad faith" rule is applicable only in exceptional cases, we feel a very strong showing should be required before it may be used against a trustee in a bankruptcy case. We therefore, hold that in the case of a trustee the level of proof required to prove "bad faith" is considerably higher than that required as to the usual litigant. That the trustee is a hard bargainer, even that he refuses to bargain at all, is not of itself evidence of "bad faith". Each trustee must do his thing his own way, and Congress had told us in the Bankruptcy Reform Act of 1978 to stop getting our kicks vicariously by looking over the trustee's shoulder or second guessing him. Monday-morning quarterbacking will not render more attractive the thankless job of a trustee. Except for reasons of courtesy, neither the trustee nor the attorneys have any interest in an expression by us of what we would have done in the present situation, and it is completely immaterial. We are asked to hold that the trustee acted in "bad faith"; we do not find that he so acted, and we therefore deny the application of the landlord for compensation by way of attorneys fees.

**2.** Sec. 326 bases the trustee's compensation on moneys disbursed or turned over by him to parties in interest and limits the trustee's compensation to a maximum of:

15% on the first $1,000 or less

6% on amount of $1,000—$3,000
3% on amount of $3,000—$20,000
2% on amount of $20,000—$50,000
1% on any amount in excess of $50,000