**In re Barbara USOSKIN, Debtor.**

**Hukumad CHAUDHRY and Haridas Shah, Plaintiffs,**

v.

**Barbara USOSKIN, Defendant.**

**In re Simion KSENZOWSKI, Debtor.**

**Hukumad CHAUDHRY and Haridas Shah, Plaintiffs,**

v.

**Simion KSENZOWSKI, Defendant.**

**Bankruptcy Nos. 085–50830, 085–50831. Adv. Nos. 183–0400, 183–0402.**

United States Bankruptcy Court, E.D. New York.

June 6, 1986.

---

Manojkumar D. Patel, New York City, for plaintiffs.

Robert W. Tauber, Brooklyn, N.Y., for debtors/defendants.

## DECISION ON AMOUNT OF SANCTIONS

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court for determination is the amount of the sanctions to be imposed upon the plaintiffs in these two proceedings, Hukumad Chaudhry and Haridas Shah, and their attorney, Manojkumar D. Patel, Esq. The reasons which impelled this Court to determine sanctions to be appropriate are fully set forth in this Court's Opinions of November 27, 1985. 56 B.R. 819. The appeals from the judgments predicated on those decisions were dismissed as untimely on February 11, 1986 by the Honorable John R. Bartels, United States District Court Judge. Judge Bartels, however, did not stop there, but said that were he to rule on the merits, he would affirm this Court's findings of facts and conclusions of law. He independently

castigated the conduct of the plaintiffs and their attorney, saying of them, they

> "have been contemptuous in their conduct before the bankruptcy court and have themselves been guilty of fraud and abuse of the legal process. They have disregarded the bankruptcy court's schedules and orders, have made false statements with regard to most of the material facts in this case, particularly with reference to the defendant Usoskin, and are guilty of generally outrageous conduct".

Memorandum Decision and Order, 2/11/86 at p. 4, 86 Civ. 86, (A.P. No. 183–0400–21), 86 Civ. 87 (A.P. No. 183–0402).

With particular reference to Bankruptcy Rule 9011, Judge Bartels said "it is obvious that the complaint was not well grounded in fact and that no reasonable man could sign a certificate to that effect". Judge Bartels concluded by saying that he not only "heartily approves of sanctions, but sincerely hopes that they are sufficiently severe in light of these parties' conduct." *Id.* at 4–5.

Present at the hearing on sanctions, which consumed one full day, were Patel, Chaudhry, Shah and the attorneys for the debtors, Robert Tauber, Esq., and Richard Koral, Esq. Tauber and Koral jointly submitted an · exhibit which, as amended in court, showed that they had spent 73½ hours on the representation of Usoskin and that Tauber alone had spent 27¼ hours on the representation of Ksenzowski. For their work in the *Usoskin* case, they requested $9,187.50 in fees, and for the work in the *Ksenzowski* case, $3,406.25, for a total of $12,593.75.

Both Koral and Tauber took the stand and were subjected to vigorous cross-examination by Patel respecting their work.

Chaudhry and Shah submitted lengthy affirmations, as did Patel, with respect to the imposition of sanctions upon them. These affirmations took issue with various statements in this Court's earlier Opinions and insisted that the plaintiffs had opposed in good faith the discharge of the debtors.

The Court also received an offer of proof from Patel, but ruled after its reception, that the facts which Patel said he planned to prove through his clients were not relevant to the limited issues before the Court in the hearing on sanctions.

Tauber, in addition to requesting attorneys' fees, asked that each of the debtors be awarded $5,000.00 in compensation for the delay in receiving their discharge caused by the plaintiffs. He noted the emotional trauma Usoskin has sustained as a result of the three years in which her bankruptcy discharge has been pending due to the plaintiffs' groundless objections. He also asked that a fine of $5,000.00 be imposed as a sanction, payable to the Court, to recompense it for the imposition on the Court's time.

### The Applicable Law

■ This is a core proceeding. 28 U.S.C. § 157(b)(2) "... [the] hearing by the bankruptcy court to impose sanctions based on conduct occurring during a core proceeding is a 'matter ... integral to the adjudication of bankruptcy' and one that has been 'traditionally before the bankruptcy court' ". *Matter of Emergency Beacon Corp.*, 52 B.R. 979, 987 (S.D.N.Y.1985), *aff'd on other grounds*, 790 F.2d 285 (2d Cir.1986). Plaintiffs' objections to the debtors' discharge constituted a core proceeding squarely covered by 28 U.S.C. 157(b)(2)(J). Therefore, this hearing on sanctions is, likewise, a core proceeding.

Under the "American Rule", parties to litigation bear their own litigation costs, including attorneys' fees, except where a statute provides otherwise. There are, however, a number of exceptions to that Rule. In this case, the Court is awarding attorneys' fees to the debtors pursuant to (1) the court's general equitable powers, (2) 28 U.S.C. § 1927 and (3) Bankruptcy Rule 9011.

■ Pursuant to a court's "inherent equitable power" attorneys' fees may be awarded where the unsuccessful party has acted "in bad faith, vexatiously, wantonly or for oppressive reasons". *Alyeska Pipe-*

line Service Co. v. Wilderness Society 421 U.S. 240, 258–259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (quoting *F.D. Rich Co. v. United States*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). "The bad faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). It may be found also in the conduct of the litigation. *Id.* at 766, 100 S.Ct. at 2464.

▆▆▆ Two specific findings must be made: (1) that the losing parties' challenged actions were "entirely without color" and (2) that they were made, or taken, "for reasons of harassment or delay or for other improper purposes". *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329 (2d Cir.1986); *Sierra Club v. United States Army Corps of Engineers*, 776 F.2d 383 (2d Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986); *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir.1982); *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078 (2d Cir.1977). Whether a claim is colorable depends upon "whether a reasonable attorney could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established*". *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) (emphasis in original quoted in *Dow Chemical Pacific*, *supra*, at 344.). Under the court's equitable powers, sanctions may be imposed against counsel, as well as the parties. *Roadway*

*Express, supra*, 447 U.S. at 764–65, 100 S.Ct. at 2463–64.

▆▆ In assessing whether there has been substantive bad faith, the conduct of the parties instigating, or maintaining, the litigation is critical. Substantive bad faith is exhibited, for example, by "pursuit of frivolous contentions"; procedural bad faith is exhibited by, for example, the "use of oppressive tactics or the willful violations of court orders". *Dow Chemical Pacific, supra*, at 344.

Bankruptcy courts, as courts of equity, it is now well settled, may assess sanctions under the bad faith exception to the American Rule. *In re Emergency Beacon Corp.*, 27 B.R. 757, 762 (S.D.N.Y.1983) *aff'd in part and reversed in part*, 52 B.R. 979, 987–88 (S.D.N.Y.1985), *aff'd on other grounds*, 790 F.2d 285, 288 (2d Cir.1986); [1] *In re McGowan*, 18 B.R. 981 (Bankr.E.D.N.Y.1982); *In re Miller*, 14 B.R. 443 (Bankr.E.D.N.Y.1981); *In re Hammett*, 28 B.R. 1012 (E.D.Pa.1983); *Matter of Abel*, 17 B.R. 424 (D.Md.1981); *In re Eastern Erectors, Inc.*, 396 F.Supp. 797 (E.D.Pa.1975); *In re Airspeed Hawaii, Ltd.*, 17 B.R. 510 (Bankr.Hawaii 1982); *In re Southern Pipeline Corp.*, 22 B.R. 671 (Bankr.Mass.1982); *In re Arzola*, 11 B.R. 766 (Bankr.Puerto Rico 1981); *In re Ratmansky*, 2 B.R. 527 (Bankr.E.D.Pa.1980).

▆▆ Attorneys' fees may also be awarded under 28 U.S.C. § 1927, which gives a court statutory authority to award said fees. It authorizes the court to require any attorney "who so multiplies the proceedings in any case unreasonably and vex-

---

**1.** The Bankruptcy Court (Schwartzberg, J.) found lack of good faith and awarded attorneys' fees against a party to the bankruptcy proceeding. The fees awarded included compensation for services in prosecuting what the bankruptcy court termed a "frivolous" appeal from the bankruptcy court's early rulings. *In re Emergency Beacon Corp.*, 27 B.R. 757 (Bankr.S.D.N.Y. 1983). The District Court (Edelstein, J.) agreed that the bankruptcy court had inherent power to sanction attorneys for abuse of litigation practices, but found that the bankruptcy court had misapplied the bad faith standards to one phase of the litigation. The District Court, however, upheld both the bankruptcy court's right to

sanction frivolous appeals and to make a party guilty of bad faith pay his opponent's attorney's fees. *Matter of Emergency Beacon Corp.*, 52 B.R. 979, 987, 88 (S.D.N.Y.1985). The appeal to the Court of Appeals, insofar as relevant to this proceeding, was limited to the District Court's reversal of the bankruptcy court's award of fees in connection with the frivolous appeal. The Court of Appeals sustained the District Court on the ground that to allow the bankruptcy court to impose sanctions because an appeal was taken from its decision would chill the right of appeal. *In re Emergency Beacon Corp.*, 790 F.2d 285, 288 (2d Cir.1986).

atiously" to satisfy personally the excess costs, expenses and attorneys' fees incurred as a result. The fees awarded under this section are limited to those expenses reasonably incurred to meet the other party's groundless bad faith procedural moves. *Browning Debenture Holders' Committee, supra,* 560 F.2d at 1089. They are payable by the attorney, not the party he represents.

Just recently the Second Circuit assessed fees against an attorney for failing to advise the Court, or his opponent, that an appeal had been settled. The Court of Appeals said: "In view of the heaviness of this court's docket, we can scarcely afford to countenance artifical increases of judicial burdens caused by an attorney's plain disregard of his responsibilities to the court". *S & D California Fruit Exchange, Inc. v. Gurino,* 783 F.2d 345, 347 (2d Cir.1986).

■ Procedural or substantive bad faith can also lead to sanctions under F.R. C.P. 11, of which the bankruptcy analog is Bankruptcy Rule 9011. Bankruptcy Rule 9011, like F.R.C.P. 11, requires that every pleading, motion or other paper be signed by an attorney of record where the party is represented by an attorney, or otherwise by the party himself. Under the Federal Rule and its bankruptcy equivalent, that signature constitutes a certificate by the signer "that he has read the document; that to the best of his knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay or to increase the cost of litigation". If a document is signed in violation of this Rule, the court "shall impose on the person who signed, the represented party, or both, an appropriate sanction which may include an order to pay ... the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee". As the Second Circuit has

noted, the inclusion of the word "shall" makes the imposition of sanctions mandatory where the Rule has been violated. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

■ Unlike the judicially evolved bad faith exception to the American Rule, the test under F.R.C.P. 11 (and necessarily Bankruptcy Rule 9011), is objective, not subjective. The focus of the inquiry is whether a competent attorney, *after reasonable inquiry,* could have formed a reasonable belief that the pleading was well grounded in fact or warranted by existing law or a good faith extension of such law. *Kamen v. American Telephone & Telegraph Co. et al,* 791 F.2d 1006, 1010, 1012 (2d Cir.1986). "Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer. But where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated." *Eastway Construction Corp.,* 762 F.2d at 254. *Nemeroff* may still govern the bad faith exception, but it is not the test under Rule 11. *Id.* at 253.

■ Rule 11 differs from the bad faith exception in another significant respect: whereas, the bad faith exception requires findings in the conjunctive, under Rule 11, sanctions can be imposed either where a pleading has been interposed for any improper purpose, *or where* after reasonable inquiry a competent attorney could not form a reasonable belief, that a pleading was well grounded. *Id.* at 254.

### The Court's Prior Opinions

In both these proceedings, the Court determined that there was present here both substantive and procedural bad faith justifying sanctions under the bad faith exception to the "American Rule", under 28 U.S.C. § 1927 and under Bankruptcy Rule

9011. It is the view of this Court that relitigation of the conclusions reached in this Court's earlier decision is now precluded by the doctrine of law of the case and those conclusions are no longer open to challenge.

Nevertheless, the affirmations submitted by Patel with respect to sanctions and his offer of proof were largely limited to denying, or seeking to explain, certain of the evidentiary facts which had led this Court to conclude that sanctions were appropriate. Even if this Court's findings were subject to relitigation, nothing adduced by Patel showed them to be in error.

Certain central facts are clear. As Judge Bartels noted, "It is obvious that the complaint was not well grounded in fact" and "no reasonable man could sign a certificate" ... "that to the best of his knowledge, information and belief formed after reasonable inquiry [it] is well grounded in fact". Memorandum Decision and Order, 2/11/86 at p. 4.

The claim that Shah and Chaudhry had grounds for opposing the discharge of Usoskin and Ksenzowski had no substance whatsoever. No competent attorney, after making reasonable inquiry as to the evidence required under the bankruptcy law to oppose discharge could have concluded otherwise.

Patel, after pointing to his client's ignorance of American law and their upbringing in an another culture, argued that they were not aware when he filed their complaints objecting to the discharge of Usoskin and Ksenzowski, that they were not well within their rights. Assuming the truth of this contention, this would demonstrate, at best, subjective, not objective, good faith, since had Patel made the reasonable inquiry mandated by law, he would have learned that his clients had no reasonable grounds for their complaints. But even objective good faith was lost when the Court itself, at the very first pre-trial hearing, advised Patel of the insufficiency of the facts in his original complaint to survive a motion to dismiss, thus putting him and his clients on notice that these facts could not block the debtors' discharge. In promptly amending both complaints, to set forth, *in haec verba,* the grounds listed in the Code for denying a discharge, without regard to what the facts actually were, Patel and his clients demonstrated their real purpose was not to obtain a judicial determination of a bonafide claim, but to delay the debtors' inevitable discharge.

Their lack of both objective and subjective good faith was then aggravated by the procedural bad faith with which the litigation was pursued. Patel and his clients prolonged the proceedings and obstructed the resolution of their charges by their repeated failure to appear on the dates fixed by the court for hearing and trial. Patel demanded discovery on terms which he then made impossible to meet.

In the *Ksenzowski* case, Patel buried the Court and Ksenzowski's attorney with redundant and verbose motions, further muddying the record by filing false and misleading affidavits, serving no purpose other than delay.

Great injury has been done Usoskin, a gentle and troubled woman, by the groundless obstacles put in her way of obtaining the fresh start to which she was clearly entitled, while simultaneously involving her in protracted litigation, totally without merit.

Ksenzowski, an immigrant to this country, already handicapped by his limited knowledge of the English language, has been put to inordinate trouble and to an expense which he can little afford, as a result of the plaintiffs' abuse of the bankruptcy laws.

But for the plaintiffs, both Usoskin and Ksenzowski would have promptly obtained the discharge to which the bankruptcy laws entitled them, without being put to any expense for the retention of counsel. Both initially filed *pro se;* what small services Koral was rendering to Usoskin, he was doing without charge. It was only as a result of the plaintiffs' groundless complaints that each was forced to commit himself to the payment of a substantial fee

to counsel and then return to court repeatedly, while Patel, by motions and discovery practice, built up the burden and the cost to them and their attorneys.

### The Sanction Hearing

At the hearing on sanctions, Patel and his clients, ignoring for the most part the lack of merit of their complaints, while insisting on their good'faith in prosecuting it, concentrated on peripheral and insignificant issues. Thus, Patel stresses that at the pre-trial hearing in February, at which the trial date was fixed, he made known to the Court and to Koral, Usoskin's counsel, his plans to travel to India. But as the record shows, his trip was scheduled to terminate by the end of March, and it was in light of this intelligence that the Court fixed the trial date of April 30th, at which neither Patel nor his clients appeared. Patel also urges that subsequent to his return, Koral failed to advise him of the new trial date, although instructed to do so by Bankruptcy Judge Duberstein. Whatever Judge Duberstein's instructions to Koral, it was the obligation of Patel, as pointed out in this Court's earlier Opinion, to keep himself advised of the progress of the case that he had placed on the Court's calendar, an obligation he failed to meet.

Subjecting his adversaries' papers to a meticulous examination, Patel has collected a variety of small complaints. It would serve no purpose to consider them in detail, since none in any way excuses, or matches, the misconduct of Patel and his clients.[2]

## THE AMOUNT OF SANCTIONS

Originally Usoskin represented herself *pro se*, receiving guidance and help from Koral, who only became her attorney of record after Shah and Chaudhry, through their attorney, Patel, filed their adversary proceeding to block her discharge. Koral then formally appeared on her behalf, at-

tended the scheduled pre-trial and trial hearings, drafted an answer to the amended complaint, aided her in response to plaintiffs' request for discovery, and prepared on her behalf a motion to dismiss the complaint and a supporting memorandum. When he ceased his representation, he was succeeded by Robert Tauber, who represented her at the trial and, thereafter, in preparing various post-trial documents, including proposed findings of fact and conclusions of law.

Koral originally undertook to work for Usoskin without compensation. When the matter became more complex, he expressed the hope to Ms. Usoskin that compensation would be forthcoming. He understood that she agreed to pay him for the time when she was able to do so.

Tauber charged Usoskin a total fee of $800, of which he has received $150.

Koral made no charge to Ksenzowski who he represented only briefly. Ksenzowski agreed to pay Tauber $500.00 and paid that sum in full over the course of the litigation.

Neither Koral nor Tauber maintained contemporary time records regarding the services performed. Both have reconstructed their time records, the accuracy of which they affirmed on the witness stand.

According to these reconstructed records, Koral worked 16½ hours on the *Usoskin* case. His normal fee he states is $175.00 per hour. However, he is asking compensation only at the rate of $125.00 per hour. Mr. Tauber's reconstructed records reflect 57 hours for Usoskin and 27¼ for Ksenzowski, for which he also asks compensation at the rate of $125.00 per hour.

■ Since attorneys' fees are not being requested in a case brought under a fee-shifting statute where, from the outset, the possible recovery of attorneys' fees is with-

---

**2.** Patel complains (1) that the Court, because of Hurricane Gloria, accepted Tauber's post-trial papers one day past the deadline previously set; (2) a set of papers mailed him by Tauber did not include a copy of the affidavit of service by mail

filed with the Court; (3) Ksenzowski's answer, which Patel received by mail, was not served also personally, although the Court's records contain an affidavit of personal service.

in the contemplation of the parties, but are in the nature of sanctions for unanticipated misconduct, the Court does not believe the *Carey* rule that contemporaneous time records are a prerequisite to the allowance of attorneys' fees to be applicable. *New York State Association for Retarded Children v. Carey*, 711 F.2d 1136, 1142 (2d Cir.1983). To require attorneys, particularly those representing indigent clients and receiving minimal compensation, to maintain elaborate time records in anticipation of misconduct, would be unreasonable.[3]

The minute cross-examination to which Patel subjected both Koral and Tauber exposed no significant errors in the records each had reconstructed, except that Tauber agreed that an hour should be deleted from the hours worked on the *Kseznowski* case because it duplicates time worked in the *Usoskin* case. However, the four hours spent by Koral in aiding Usoskin prior to the filing of the plaintiffs' lawsuit cannot be the subject of sanctions because not necessitated by the plaintiffs' misconduct. The plaintiffs can only be charged for the hours spent in responding to, and litigating, the groundless complaint. Otherwise, the time recorded is consistent with the work done.

Furthermore, this Court lacks the power to impose sanctions for the appeal taken from this Court's decision. *In re Emergency Beacon Corp., supra*, at 288 (2d Cir.1986). Therefore, Tauber's hours for the work on the appeal must be excluded. (Six hours on the *Usoskin* case and six hours on the *Ksenzowski* case). .

A charge of $125.00 per hour comports with the Court's knowledge of fees being charged in the area for services of the character performed by Koral and Tauber. This Court is peculiarly aware of hourly charges because of its responsibility for reviewing fees in all bankruptcy cases.

From the Court's own knowledge of this case it believes the hours to be understated by the two attorneys, rather than the opposite. The redundant and overlapping motions filed by Patel, the misstatements with which they are larded and Patel and his clients' disregard of the time tables and the hearing dates established by this Court, all have contributed to a record which has imposed enormous burdens, not only on opposing counsel, but on this Court. This Court can echo the Second Circuit in deploring the "artificial increases of judicial burdens" caused by the conduct for which it is now imposing sanctions.

That Koral and Tauber were working without fee, or for nominal fees, does not forfeit their right to reasonable attorneys' fees at the rate prevailing in the community. Under fee-shifting statutes, the courts have uniformly held that the award of attorneys' fees does not depend upon the obligation to pay an attorney and is not precluded by the fact that no fee was charged. *Ceglia v. Schweiker*, 566 F.Supp. 118, 123 (1983) (and cases cited); *Martin v. Heckler*, 773 F.2d 1145, 1152 (11th Cir. 1985); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 37 (2d Cir.1978); *Cornella v. Schweiker*, 728 F.2d 978, 986–87 (8th Cir.1984); *see also, Oguachuba v. I.N.S.*, 706 F.2d 93 (2d Cir.1983). No reason suggests itself for a different rule where fees have their source in misconduct. *See, Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558, 572 (E.D. N.Y.1986). Indeed, there are even stronger reasons in the latter situation for not making an award depend upon what was actually paid an attorney by the victim of the

---

**3.** It is true that in *Sierra Club v. United States Army Corps of Engineers, supra,* which involved sanctions for lack of good faith (but not under F.R.C.P. 11), the Court of Appeals rejected the applicability of the *Carey* decision because the work for which the attorneys' fees were sought had been performed prior to the 1983 *Carey* decision thereby raising the clear implication that otherwise *Carey* would have been applicable. However, to apply the *Carey* rule to sanctions under F.R.C.P. 11 and its bankruptcy analog, Bankruptcy Rule 9011, would negate the availability of sanctions in so many cases where the Rules says sanctions "shall" be imposed, that this Court does not believe that the Court of Appeals, when squarely faced with the issue, will hold the *Carey* rule to be applicable to these disciplinary rules.

misconduct. To foreclose the imposition of monetary sanctions where the attorney was not being fully compensated by his client would license misconduct wherever a litigant knew he was dealing with someone not paying or unable to pay prevailing counsel fees. Those most in need of protection would get the least.

 Furthermore, the award of fees at the prevailing market rate comports with the primary purpose of Rule 11 which is deterrence. *Eastway Construction Corp., supra,* at 565–566 (E.D.N.Y. May 23, 1986). One of the most fundamental goals of the bankruptcy law is to provide the honest debtor with a "fresh start". *Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). The award of fees at full market rate will deter creditors from wrongfully delaying the fresh start which Congress intended.

Therefore, in this case, sanctions are predicated on the rates prevailing in the community, not on what Usoskin or Ksenzowski actually paid. The debtors are entitled to reimbursement of the amounts they actually paid their attorneys. Their attorneys are entitled to the balance of the agreed-upon fee and to the value of the services rendered necessitated by the misconduct of Patel and his clients.

While this Opinion was being written, the thoughtful and exhaustive decision by Chief Judge Jack B. Weinstein in *Eastway Construction Corp., supra,* became available. The factors which he says are to be considered in determining the amount to be awarded, such as the vindictiveness of the sanctioned party's behavior, (*Id.,* at 571) support the assessment, in this case, of the maximum amount.

In the *Usoskin* case, attorneys' fees in the total amount of $7,937.50 will be imposed as sanctions, $6,375.00 on account of the work performed by Tauber and $1,562.50 due to the work performed by Koral. Out of this figure, Usoskin will receive back the $150.00 she has already paid Tauber.

In the *Ksenzowski* case, attorneys' fees in the amount of $2,531.25 will be imposed, out of which Ksenzowski is to be reimbursed the $500.00 he has already paid Tauber.

Apart from attorneys' fees, nothing can be awarded in this proceeding to compensate either debtor for the injury done him by the plaintiffs. Those would have to be recovered, if at all, in an independent proceeding. *Emergency Beacon, supra,* 27 B.R. at 761. Nor does this Court know of any authority for imposing a fine payable to the Court. Therefore, so much of Mr. Tauber's applications as seeks either compensation for his clients or a fine, must be denied.

Judgments consistent with this Opinion are being entered contemporaneously.