750 F.2d 434
 Carson RICE, Plaintiff,
v.
GLAD HANDS, INC. and Allstate Insurance Company, et al.,
Defendants-Third Party Plaintiffs-Appellants,
v.
Robert Murray COLLINS and Phillip Alan Froude, Underwriters
at Lloyd's, et al., Third Party Defendants-Appellees.
 No. 83-4505.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 14, 1985.
As Amended on Denial of Rehearing March 18, 1985.
 
 Gary P. Kraus, James E. Diaz, Sr., Lafayette, La., for defendants-third party plaintiffs-appellants.
 Margot Mazeau, George W. Healy, III, New Orleans, La., for third party defendants-appellees.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before TIMBERS,* POLITZ and RANDALL, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 Glad Hands, Inc. and its protection and indemnity (P & I) insurers, appeal the dismissal of their third party demand against Glad Hands' excess maritime employer's liability (MEL) insurers. The trial court's dismissal was based on the conclusion that the record contained insufficient evidence to support a finding that the plaintiff, Carson Rice, was a seaman. The district court considered only the trial record as it was constituted prior to the time the third party demand was filed, limiting the evidence because of an apparent stipulation to that effect between appellants and other parties to the litigation, made at a time when the appellees were not third party defendants. That stipulation does not appear of record and we are not able to determine, on the basis of the present record, the scope, extent and applicability of the reported stipulation. Accordingly, we vacate the judgment and remand for further proceedings.
 
 Facts
 
 2
 On December 22, 1979, Carson Rice, an employee of Glad Hands, was injured while moving from the M/V SEA LEVEL II to an Amoco Production Company platform where Glad Hands employees were sandblasting and painting pipes under the direction of Transco Offshore Pipeline Company. The vessel was owned by Sea Level Boat Company and operated by C.S.I. Hydrostatic Testers. On December 18, 1980, Rice filed suit under the Jones Act and/or general maritime law against Glad Hands, Sea Level, C.S.I., Transco and Amoco.
 
 
 3
 Prior to the filing of Rice's original complaint, Commercial Union Insurance Company, Glad Hands' primary Jones Act and Longshoremen's and Harbor Workers' Compensation Act (LHWCA) carrier, paid approximately $22,000 to or on behalf of Rice as a result of his injuries. Commercial Union intervened in Rice's suit claiming reimbursement of the sums paid. The defendants filed various cross claims claiming contractual indemnity and maritime tort indemnity in favor of an allegedly passive tortfeasor against an allegedly actively negligent tortfeasor. During this time Transco filed a third party claim against McDermott, Inc., precipitating further filings involving the active/passive tortfeasor issue.
 
 
 4
 On July 16, 1982, Sea Level and C.S.I. filed third party demands against their P & I insurers, seeking contractual indemnity. These demands were severed from trial on the principal demand. On August 5, 1982, Glad Hands filed a third party complaint against Highlands Insurance Company alleging that Highlands provided P & I insurance coverage. Glad Hands then substituted Allstate Insurance Company, United Pacific Insurance Corporation, Citadel General Insurance Corporation, Citadel Insurance Company, and Underwriters at Lloyds & Company in London for Highlands Insurance Company as P & I insurers. Glad Hands filed immediately thereafter another third party complaint against Orion Insurance Company, Ltd., Insurance Company of North America, Bishopgate Insurance Company, Ltd., British Law Insurance Company, Ltd., Insurance Corporation of Ireland, Continental Insurance Company, Elders Insurance Company, Royal Insurance Company, Commercial Union, Sphere/Drake Insurance Company, Ltd., Threadneedle Insurance Company, Ltd., London Assurance Company, Ocean Marine Insurance Company, and Lloyds of London Companies, claiming coverage under their comprehensive general liability (CGL) policies.
 
 
 5
 When the case came on for trial on August 16, 1982, the following claims were pending:
 
 
 6
 (1) Rice's Jones Act and maritime tort claims against Glad Hands, Sea Level and C.S.I.;
 
 
 7
 (2) Rice's maritime tort claims against Amoco;
 
 
 8
 (3) Rice's maritime tort claims against Transco;
 
 
 9
 (4) cross claims between Glad Hands, C.S.I., and Sea Level;
 
 
 10
 (5) third party claims by Glad Hands, C.S.I., and Sea Level against their P & I insurers;
 
 
 11
 (6) cross claims between Amoco and Glad Hands, C.S.I., and Sea Level;
 
 
 12
 (7) cross claims between Transco and the other defendants;
 
 
 13
 (8) third party claim by Transco against McDermott;
 
 
 14
 (9) cross claims by McDermott against Sea Level, Glad Hands, and C.S.I.;
 
 
 15
 (10) cross claim by Amoco against McDermott;
 
 
 16
 (11) third party claim by Glad Hands against its CGL insurers; and
 
 
 17
 (12) intervention by Commercial Union for reimbursement if Rice recovered.
 
 
 18
 Seaman status was an issue in at least the first group of claims.
 
 
 19
 After the first day of trial, Rice reached a settlement agreement with Glad Hands, Sea Level, C.S.I., and their P & I insurers. Before testimony was resumed on August 19, 1982, the third day of trial, Rice also settled with Amoco. The settlements satisfied all claims by Rice against the four defendants and their insurers under the Jones Act and/or general maritime law but specifically reserved any rights Rice might have against Glad Hands and Commercial Union under the LHWCA.
 
 
 20
 On the first day of trial a few questions relating to status were directed to co-workers of Rice. Rice did not testify that day. No testimony was taken on the second day. When testimony was resumed on the third day of trial, after the settlements, Rice took the stand. His counsel did not ask any question relevant to seaman status. No questions relating to seaman status were asked of any witness on the fourth and final day of trial. It is immediately apparent from the transcript that after the settlements, trial counsel did not consider seaman status to be a matter of concern.
 
 
 21
 Upon conclusion of the trial, the jury returned a verdict absolving Transco, the sole remaining defendant, of all claims of negligence. After entry of the verdict, the court asked the parties to note the claims which were not resolved. Letters of counsel in the record reflect that only Commercial Union's intervention remained open after the jury verdict. All other claims had been settled, dismissed or become moot. Commercial Union claimed that it was entitled to reimbursement from the settlement which Rice had received whether he was a seaman or a longshoreman. Nevertheless, Commercial Union asked the court to declare that Rice was a seaman and to grant recovery on that basis. Commercial Union apparently wanted to have its recovery on the intervention based upon a determination that Rice was a seaman to foreclose future LHWCA claims by Rice, such claims having been reserved under the settlement.
 
 
 22
 According to the statements of counsel at oral argument before this court, in this setting, and for this specific purpose, the trial judge asked the parties to stipulate that seaman status could be determined on the record as then constituted, and such a stipulation was then made by the parties remaining in the case. It is not possible to determine the terms of the stipulation from the record because, as noted, the stipulation was not reduced to writing and no transcript of the discussion and agreement was made. Counsel for Glad Hands' P & I insurers stated at oral argument that he agreed to the stipulation solely for purposes of resolving the intervention and that seaman status and Commercial Union's theory of recovery were of no moment to Glad Hands' P & I carriers whose exposure had been fixed by the settlement agreement. Counsel insisted that resolution of the intervention would merely determine the payee of settlement proceeds.
 
 
 23
 The following month, on September 22, 1982, the trial judge apparently granted a motion allowing Glad Hands and its P & I insurers to file a third party demand against Glad Hands' excess MEL insurers.[1] The only reference to this motion and order in the record before us is in an October 5, 1982 letter filed with the third party complaint against the excess MEL insurers.
 
 
 24
 At oral argument counsel further informed this court that at a status conference on the P & I insurers' third party demand against the excess MEL insurers, the trial judge asked counsel for the excess MEL insurers to agree to a determination of seaman status on the basis of the evidence adduced at the trial. It would appear that the trial judge apparently considered appellants bound by their earlier stipulation for they were not given the same option. Counsel for the excess MEL insurers was given an opportunity to read the trial transcript and then decide whether to agree to be bound by it. Had that counsel declined a determination of seaman status on the trial record we are told that all parties would have been allowed to introduce evidence on the issue.
 
 
 25
 After reading the record and noting the paucity of evidence on the status issue, the MEL insurers' counsel informed the trial judge that her clients agreed to a determination of seaman status on the basis of the trial record. Counsel for appellants objected to the trial judge's decision to apply the earlier stipulation to the subsequent third party claim, maintaining that his clients had agreed to the stipulation solely for the purposes of the intervention. Over appellants' objections, the trial judge declined to permit the presentation of further evidence.
 
 
 26
 The district court found that the parties had agreed to a determination of seaman status on the basis of the trial record, based on its review of that record, found that Rice was not a seaman. The third party complaint against the excess MEL insurers was accordingly dismissed for lack of coverage.
 
 The Stipulation
 
 27
 As noted, the record before us contains neither a written stipulation nor a transcript of an oral stipulation. Nor are there any fact findings to guide our review. We are asked to attempt to piece together, from brief record references and from the statements of counsel at oral argument, what transpired. Counsel for appellants, the only party to the stipulation appearing before this court, informed us, as an officer of the court, that the only stipulation made came at the close of the trial when the only matter remaining for decision was Commercial Union's intervention and that the stipulation was made in that setting with that sole issue in mind. The third party complaint was not filed against the appellees until over a month later. A separate suit could have been filed but the claim was logically tendered for consideration in the same proceeding for apparent valid reasons, including judicial economy. We do not discredit these statements by an officer of the court, but the appellate function does not permit the acceptance of these statements as a substitute for evidence or factual findings by the trial court. The record before us does not permit of a resolution of the issue raised on appeal. The scope and impact of the Glad Hands/Commercial Union stipulation must first be addressed, and specific fact findings made, by the trial court.
 
 
 28
 Having determined to remand, we make the following observations for such use as the trial court deems appropriate. Like contracts, stipulations must be interpreted in light of the circumstances under which they are made. Chouest v. A & P Boat Rentals, Inc., 472 F.2d 1026 (5th Cir.1973). When counsel for appellants agreed to the stipulation at the close of trial, he suggests that the only claim pending before the court was the intervention; the claim now before the court had not yet been filed. One must question whether the stipulation automatically extended to the not-as-yet filed claim. See Melton v. McCormick, 94 F.R.D. 344 (W.D.N.Y.1982); see also Seay v. International Assoc. of Machinists, 360 F.Supp. 123 (C.D.Cal.1973). A stipulation binds parties only to the terms actually agreed upon. Branding Iron Club v. Riggs, 207 F.2d 720 (10th Cir.1953).
 
 
 29
 In addition, this case does not present the usual situation in which one party to a stipulation is seeking enforcement of the stipulation against another party to the agreement. While non-parties to a stipulation are occasionally allowed to use the stipulation in later claims as an admission by the stipulators, the general rule is that a stipulation is only enforceable by a party to the stipulation against other parties thereto. See e.g., Gold Seal Importers, Inc. v. Westerman-Rosenberg, Inc., 133 F.2d 192 (2d Cir.1943); Nachman Spring-Filled Corp. v. Spring Products Corp., 74 F.2d 710 (2d Cir.1935). Care must be taken to assure, considering the peculiar circumstances of a given case, that a rigid enforcement of the stipulation does not lead to an injustice. Central Distributors, Inc. v. M.E.T., Inc., 403 F.2d 943 (5th Cir.1968); Marshall v. Emersons Ltd., 593 F.2d 565 (4th Cir.1979). If, when counsel for appellants agreed to the court-requested stipulation, seaman status had no impact on his clients' position and no right of his clients was put in jeopardy, it must be determined whether enforcement of that stipulation and dismissal of the third party demand without now allowing appellants an opportunity to be heard might result in an injustice.
 
 
 30
 The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent herewith. The district court may make the requisite fact findings on the basis of the present record if it is found to be sufficient, or may take evidence on the issue.
 
 
 
 *
 Circuit Judge of the Second Circuit, sitting by designation
 
 
 [1]
 Glad Hands and its P & I insurers had specifically reserved their rights against Glad Hands' excess MEL insurers when they agreed to the settlement. The excess MEL insurers were not a party to the settlement