# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-30776

United States Court of Appeals
Fifth Circuit

**FILED**

February 5, 2016

Lyle W. Cayce
Clerk

WALLACE BOUDREAUX,

Plaintiff - Appellant

v.

TRANSOCEAN DEEPWATER, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-1686

Before REAVLEY, OWEN, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Wallace Boudreaux, a seaman, entered into a settlement agreement with Transocean Deepwater, Inc. ("Transocean"), his former employer. The agreement provided that Boudreaux would recover one of two amounts from Transocean, depending on the judicial resolution of the parties' dispute. The district court held that the agreement entitled Boudreaux to the lower amount. We REVERSE.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30776

## FACTS AND PROCEEDINGS

Boudreaux claimed he injured his back while working for Transocean. For nearly five years, Transocean paid Boudreaux maintenance and cure—a small daily stipend for food, lodging, and basic medical care. *Boudreaux v. Transocean Deepwater, Inc.* (*Boudreaux I*), 721 F.3d 723, 724–25 (5th Cir. 2013). Boudreaux later sued Transocean, claiming a right to additional maintenance and cure, seeking punitive damages for Transocean's alleged mishandling of past benefits, and asserting claims for Jones Act negligence and unseaworthiness. *Id.* at 724. Through discovery, Transocean learned that Boudreaux had failed to disclose serious back problems in Transocean's pre-employment medical questionnaire in response to inquiries regarding his history of back trouble. *Id.* Transocean filed an unopposed motion for partial summary judgment on Boudreaux's claim for further maintenance and cure. *Id.* Transocean relied on the *McCorpen* defense, which provides that "a vessel owner's obligation to pay maintenance and cure to an injured seaman terminates upon proof that the seaman, in procuring his employment, 'intentionally' and 'willfully' concealed a material medical condition causally linked to the injury later sustained." *Id.* at 725 (quoting *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 549 (5th Cir. 1968)). The district court granted Transocean's motion and dismissed the claim for further maintenance and cure. *Id.* at 725.

Transocean then filed a second motion for summary judgment on Boudreaux's claims for negligence under the Jones Act and unseaworthiness under the general maritime law. The district court denied that motion. Transocean then filed a counterclaim against Boudreaux, seeking to recover payments that it had already made for maintenance and cure. Transocean moved for summary judgment on the counterclaim, arguing that its successful *McCorpen* defense established its right to restitution under the general

2

maritime law. Transocean's proposed theory of restitution presented an issue of first impression in our circuit. *See Patterson v. Allseas USA*, 145 F. App'x 969, 970–71 (5th Cir. 2005) (per curiam) (acknowledging that the return of maintenance and cure payments via restitution was *res nova* but declining to reach the issue because the employer had not established a *McCorpen* defense).

Before the district court ruled on Transocean's motion for summary judgment on its counterclaim, the parties reached a bracketed settlement agreement. *Boudreaux I*, 721 F.3d at 725. Initially, the parties filed a "Joint Motion for Revised Scheduling Order" ("Joint Motion"), which provided that the parties "have reached a bracketed settlement agreement which has resolved all of the issues currently pending before the [district c]ourt, with the exception of Transocean's legal/substantive right to maintain a Counterclaim against Wallace Boudreaux for recovery of its maintenance and cure payments." The Joint Motion further provided that after the district "[c]ourt's ruling, the prevailing party will consent to their opponent's application to [the district court] for a certification of interlocutory appeal to the United States Fifth Circuit." The parties also "stipulate[d] that upon receiving a final ruling from the United States Fifth Circuit, the case will not need to be returned to the Court's trial docket, and absent an instruction from the Fifth Circuit for further findings by the trial court, the parties will promptly submit a Motion to Dismiss as of Settlement."

Later, the parties memorialized their agreement in a "Receipt, Release, Indemnity and Hold Harmless Agreement" ("Release"). The Release states that "Boudreaux has agreed to dismiss all his claims against Transocean, including those for Jones Act negligence, unseaworthiness, and for payment of additional maintenance and cure, while allowing Transocean to maintain its counterclaim under the terms and conditions of the 'high-low' settlement agreement described herein." Further, the Release provides:

> Transocean and Boudreaux agree to compromise and settle all disputes between them, with the precise amount of the settlement to be determined by the Court's ruling on whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen*. If a Jones Act employer is *not* allowed to recover maintenance and cure payments made to a seaman who is not entitled to such payments under *McCorpen,* Boudreaux will recover $90,000.00 (the "high" amount or the "maximum"). If a Jones Act employer *is* allowed to recover such maintenance and cure payments, Boudreaux will recover only $50,000.00 (the "low" or "minimum" amount).

Finally, the Release states that it "contains the entire agreement between the parties hereto."

The district court granted Transocean's motion for summary judgment on its counterclaim, concluding that employers such as Transocean are entitled to restitution of maintenance and cure payments. On interlocutory appeal, this court reversed the district court. Our court rejected Transocean's argument that a Jones Act employer who successfully establishes a defense to liability for further maintenance and cure under *McCorpen* is thereby automatically entitled to restitution for benefits already paid. *Boudreaux I*, 721 F.3d at 724, 726. However, the court noted, "[a]lready, even without fraud, an employer may offset any Jones Act damages recovered by the seaman to the extent they duplicate maintenance and cure previously paid." *Id.* at 727. Our court concluded that past payments for maintenance and cure "can be recovered only by offset against the seaman's damages award—not by an independent suit seeking affirmative recovery. The case for exercising our extraordinary power to create a new right of action has not been made." *Id.* at 728.

Transocean filed a petition for a writ of certiorari. *See Transocean Deepwater, Inc. v. Boudreaux*, 134 S. Ct. 1001 (2014) (denying certiorari). Meanwhile, Boudreaux moved in the district court to enforce the settlement, seeking the high value. Transocean opposed this motion, arguing that it was

No. 14-30776

premature before the Supreme Court ruled on its petition. Before the district court addressed these arguments, the Supreme Court denied certiorari. Transocean then filed a supplemental opposition to Boudreaux's motion to enforce the settlement, contending for the first time that the limited right to "recovery" recognized in *Boudreaux I* triggered the low settlement value under the terms of the Release. The district court agreed with Transocean and denied Boudreaux's motion. Boudreaux timely appealed. After oral argument, Transocean filed an opposed motion to incorporate the record from *Boudreaux I*.

## DISCUSSION

As a threshold matter, we consider Transocean's motion to incorporate the record from the prior appeal. While we find it unnecessary to incorporate the record from *Boudreaux I*, we will take judicial notice of that record. *See ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. Unit B 1981) ("A court may . . . take judicial notice of its own records or of those of inferior courts.")[1]

The parties' dispute largely hinges on the proper interpretation of the Release. We must first decide which law governs that issue. Boudreaux argues that the district court erred in interpreting the Release under state law, and not federal admiralty law. However, Boudreaux waived that argument by arguing for Mississippi law in the district court. "[P]arties generally are bound by the theory of law they argue in the district court, absent some manifest injustice." *Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 540 (5th Cir. 1987) (internal quotation marks and citation omitted); *see also Empl'rs Ins. of Wausau v. Occidental Petroleum Corp.*, 978 F.2d 1422, 1430 n.8 (5th Cir. 1992). Manifest injustice requires "extreme circumstances;" that a

---

[1] Transocean's motion to incorporate the record from the prior appeal is DENIED.

5

different jurisdiction's law dictates a different result does not constitute manifest injustice. *Petroleos Mexicanos*, 835 F.2d at 540. Boudreaux has argued only that federal law must apply, not that a manifest injustice will result by applying state law. We will therefore apply state law to interpret the parties' agreement. While Boudreaux relied on Mississippi law in the district court, Transocean cited Louisiana law. Because the relevant laws of Mississippi and Louisiana do not conflict, we need not engage in a choice-of-law analysis. *See Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ("[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary." (internal quotation marks and citation omitted)).

The Release is a settlement agreement, which is a contract under both Louisiana and Mississippi law. *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481–82 (5th Cir. 2014) (applying Louisiana law); *Howard v. TotalFina E & P USA, Inc.*, 899 So. 2d 882, 888–89 (Miss. 2005). Under general principles of contract interpretation, we must first seek to determine the parties' intent by examining the language of the Release. *See HeartSouth, PLLC v. Boyd*, 865 So. 2d 1095, 1105 (Miss. 2003) ("First, the court will attempt to ascertain intent by examining the language contained within the 'four corners' of the instrument in dispute." (internal citation and quotation marks omitted)); *Campbell v. Melton*, 817 So. 2d 69, 74 (La. 2002) ("The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning."). We will consider the entire document, interpreting each provision in light of the others. *See* La. Civ. Code Ann. art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."); *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003) ("When construing a contract, we will read

the contract as a whole, so as to give effect to all of its clauses."). Extrinsic evidence may be consulted only if the contract's terms are ambiguous. *Gebreyesus v. F.C. Schaffer & Assocs.*, 204 F.3d 639, 643 (5th Cir. 2000) (applying Louisiana law); *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005). "When the terms of a contract are unambiguous and lead to no absurd consequences, we interpret them as a matter of law." *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996); *see also Griffin v. Tall Timbers Dev., Inc.*, 681 So. 2d 546, 551 (Miss. 1996).

The district court determined that the Release is not ambiguous. The court held, "[t]he parties unambiguously agreed that the operative question for determining whether the upper or lower settlement amount controlled was 'whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen*.'" Because our court held that employers may "recover" such payments through an offset, the district court determined that Boudreaux was entitled only to the lower amount. On appeal, Transocean defends the district court's interpretation, while Boudreaux argues that the word "recover" in the Release, when read in context, "meant only a right to affirmative recovery by a restitution counterclaim."

We review de novo both the district court's determination that a contract is unambiguous and its interpretation of an unambiguous contract. *Henley v. Edlemon*, 297 F.3d 427, 430 (5th Cir. 2002); *Tarrant Distribs. Inc. v. Heublein Inc.*, 127 F.3d 375, 377 (5th Cir. 1997). The Release provides that "the precise amount of the settlement [is] to be determined by the Court's ruling on whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen*." The Release further provides that Boudreaux would receive the high settlement amount "[i]f a Jones Act employer is *not* allowed to recover" such

No. 14-30776

payments, and that Boudreaux would receive the low settlement amount "[i]f a Jones Act employer *is* allowed to recover" such payments. The key question is the parties' intended meaning of "recover."

The Release makes clear that the issue presented to the district court and to our court previously was whether a Jones Act employer is entitled to restitution of maintenance and cure whenever *McCorpen* applies, even in the absence of any damages award to offset. The Release states that Boudreaux "agreed to dismiss all his claims against Transocean, including those for Jones Act negligence, unseaworthiness, and for payment of additional maintenance and cure, while allowing Transocean to maintain its counterclaim under the terms and conditions of the 'high-low' settlement agreement described herein." Because Boudreaux dismissed all his claims against Transocean, there was no possibility that he could receive damages that could be offset. The parties therefore anticipated that the court's "ruling" would determine whether an employer is entitled to restitution in the absence of damages to offset. Hence, the right to "recover," whose existence the parties anticipated would be made clear by the "ruling," refers to an affirmative right of recovery not through an offset, and our court declined to recognize such a right. This conclusion finds further support in the statement that Transocean would "maintain its counterclaim under the terms and conditions of the 'high-low' settlement agreement." Because our court's holding in *Boudreaux I* did not establish the viability of Transocean's counterclaim, Boudreaux is entitled to the higher settlement amount.

Our construction of the Release is reinforced by the parties' description of the question on which Boudreaux's recovery hinges: "whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman *who was never entitled to such payments under McCorpen*." That explicit language and framing indicate that the parties intended that the right

8

to "recover" would turn on a successful *McCorpen* defense. In addition, the Release stated that "Transocean believe[d]" this issue to be "unsettled." However, in *Boudreaux I*, the court framed the right to an offset not as a new right based on the *McCorpen* defense, but rather as a *preexisting* right based on the well-established principle against double recovery. *Boudreaux I*, 721 F.3d at 727. Citing caselaw, our court observed that Jones Act damages for past medical expenses, food, and lodging may duplicate maintenance and cure payments, and that a seaman may not recover twice for these items. *Id.* at 727 n.19; *Brister v. A.W.I., Inc.*, 946 F.2d 350, 361 (5th Cir. 1991) ("[A] seaman clearly can receive only one recovery for his medical expenses.  Since the element of past medical expenses is inherent in each of the two types of recoveries [Jones Act damages and maintenance and cure], there must not be a duplication in the final award."); *Averett v. Diamond Offshore Drilling Servs., Inc.*, 980 F. Supp. 855, 859 (E.D. La. 1997) ("[The seaman] has already received wages plus fringe benefits which included the food and lodging as part of his general damage award under the Jones Act and General Maritime Law. . . . Recovery of this item of damage under the vessel owner's maintenance and cure obligation would be double recovery and thus is not allowed." (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372 (5th Cir. 1989))). Citing these cases and others, the court in *Boudreaux I* observed that the right to an offset representing duplicative damages was available "[a]lready, even without fraud . . . . This, if the employer 'show[s] that the damages assessed against it have in fact and in actuality been previously covered.'" *Boudreaux I*, 721 F.3d at 727 (alteration in original) (quoting *Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1171 (5th Cir. 1982)). Importantly, we emphasized that we were not creating "a new right of action." *Id.* at 728 ("The case for exercising our extraordinary power to create a new right of action has not been made."). While the court recognized a preexisting right unrelated to *McCorpen*, the settlement

amount, as provided in the Release, hinges on the creation of a new right of recovery based on *McCorpen*. This distinction reinforces our conclusion that the term "recover" in the Release was not intended to include the right to recover via offset recognized in *Boudreaux I*.

Because we conclude that Boudreaux is entitled to the higher settlement amount under the plain language of the Release, we need not decide Boudreaux's arguments that he is entitled to the higher amount based on the Joint Motion, Transocean's "judicial admissions," the mandate rule, the party presentation principle, or estoppel doctrines.

Boudreaux additionally argues that Transocean breached the Joint Motion and the Release by petitioning for Supreme Court review of our decision in *Boudreaux I*, although the remedy Boudreaux seeks for this alleged breach is unclear. The Release does not state that Transocean relinquished its right to petition for certiorari. In the Joint Motion, the parties "stipulated" that

> upon receiving a final ruling from the United States Fifth Circuit, the case will not need to be returned to the [district c]ourt's trial docket, and absent an instruction from the Fifth Circuit for further findings by the trial court, the parties will promptly submit a Motion to Dismiss as of Settlement.

Boudreaux argues that this stipulation is comparable to a contract and is binding on the parties. *See Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d 249, 262 (5th Cir. 2010) ("Normally a party is bound by his stipulations as a stipulation among the parties to a lawsuit is akin to a contract." (internal quotation marks and citation omitted)); 4 Williston on Contracts § 8:50 (4th ed.) ("There is a class of agreements, known as stipulations, made by adverse parties or their authorized attorneys with reference to legal proceedings pending before a court, which are generally upheld and enforced even in the absence of consideration."). Assuming that the parties are bound by the stipulation in the Joint Motion, that stipulation does

10

not forbid Transocean from seeking Supreme Court review.[2] We have held that "[a] stipulation binds parties only to the terms actually agreed upon." *Rice v. Glad Hands, Inc.*, 750 F.2d 434, 438 (5th Cir. 1985). Although the parties stated that they would "promptly submit a Motion to Dismiss" after our court's earlier ruling, the word "promptly" does not alone preclude a petition for certiorari. Indeed, only six months elapsed between our ruling and the Supreme Court's denial of the petition for certiorari. *See Transocean Deepwater, Inc. v. Boudreaux*, 134 S. Ct. 1001 (2014). In addition, "promptly" modifies the promise to submit a motion to dismiss, which neither party filed because they disputed the import of our ruling.

Boudreaux appears to have argued in the district court for the application of Mississippi law to the interpretation of the Joint Motion, and, as noted, he is bound by the theory of law that he argued below. *See Petroleos Mexicanos*, 835 F.2d at 540. The Mississippi Supreme Court has held that a waiver of appeal rights "should be very clear in its terms, and leave no doubt of the intention of the party to cut himself off from the right of appeal." *Nobile v. Nobile*, 535 So. 2d 1385, 1387 (Miss. 1988); *see also Cherokee Ins. Co. v. Babin*, 37 So. 3d 45, 48 (Miss. 2010) (holding that a settlement agreement did not waive appeal rights because it did not contain language that "clearly expresses a waiver"); *State in Interest of Jones v. Jones,* 430 So. 2d 169, 171 (La. Ct. App. 1983) ("Appeals are favored and any waiver of appeal must be expressly made."). Applying state law, the Joint Motion was not sufficiently clear to waive Transocean's right to seek Supreme Court review. Even if we apply the general maritime law, as Boudreaux now requests, we reach the

---

[2] Although we have previously reviewed a district court's interpretation of a stipulation for abuse of discretion, *see Coastal States Mkt'g, Inc. v. Hunt*, 694 F.2d 1358, 1368 (5th Cir. 1983), the district court here did not interpret the stipulation in the Joint Motion, even though Boudreaux raised below the argument that he makes here.

No. 14-30776

same result. Our court recently held, under the general maritime law: "[W]here a settlement agreement does not resolve claims itself but instead establishes a mechanism pursuant to which the district court will resolve claims, parties must expressly waive what is otherwise a right to appeal from claim determination decisions by a district court." *In re Deepwater Horizon*, 785 F.3d 986, 997 (5th Cir. 2015). We believe the situation before us is analogous. The Joint Motion does not itself resolve claims, but rather notifies the court of a settlement and requests a revised schedule to allow for judicial resolution of one disputed issue. On these facts, silence about the right to petition for certiorari does not waive that right.[3]

## CONCLUSION

Because we find that the Release unambiguously entitles Boudreaux to the higher settlement amount, we REVERSE the district court and REMAND for proceedings consistent with this opinion.

---

[3] We further reject Boudreaux's argument that Transocean made two judicial admissions in its briefs that precluded it from seeking a writ of certiorari. Transocean's statements—that "the appeal will end the litigation, as there is no need for further proceedings in the trial court," and that "the legal question certified for appeal is *res nova* and a decision will resolve this case"—do not reflect the clarity required for a judicial admission. *See United States v. Chavez-Hernandez*, 671 F.3d 494, 501 (5th Cir. 2012) ("[F]or a statement of counsel to qualify as a judicial admission it must be made intentionally as a waiver, releasing the opponent from proof of fact." (internal quotation marks and citation omitted)); *see also In re Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) ("[O]nly deliberate, clear and unequivocal statements can constitute conclusive judicial admissions." (internal quotation marks and citation omitted)).

No. 14-30776

PRISCILLA R. OWEN, Circuit Judge, dissenting:

I would affirm the district court's judgment because the court below correctly construed the settlement agreement and release. Judge Ivan Lemelle, who presided below, was involved at every stage of the proceedings in this somewhat convoluted case, and enforced the settlement agreement in accordance with its straightforward terms.

Boudreaux concedes that when he applied for employment with Transocean, he knowingly failed to disclose prior, documented injuries and therefore, when he was subsequently injured while working for Transocean, Transocean would have been entitled under *McCorpen*[1] to withhold maintenance and cure payments. Transocean paid Boudreaux $276,263.36 in maintenance and cure before it discovered Boudreaux's fraud. In Boudreaux's Jones Act suit, Transocean counterclaimed, seeking to recover the maintenance and cure payments it made. The parties then reached the high-low settlement agreement that is the subject of this appeal.

The panel majority's opinion reversing the district court is premised on a fundamental misunderstanding of both the terms of the release and settlement agreement and our court's prior decision in this case (*Boudreaux I*).[2] The parties agreed in the release that Boudreaux suffered Jones Act damages in the net amount of $90,000. Of that amount, again by agreement, $50,000 has been paid to Boudreaux. The parties agreed that the remaining $40,000 of the Jones Act damages are to be paid, or not, depending on whether "a Jones Act employer is allowed to recover maintenance and cure payments" that were "made to a seaman who was never entitled to such payments under

---

[1] *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 549 (5th Cir. 1968).
[2] *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723 (5th Cir. 2013).

13

No. 14-30776

*McCorpen.*" The panel majority is therefore mistaken when it says that "[b]ecause Boudreaux dismissed all his claims against Transocean, there was no possibility that he could receive damages that could be offset."[3] The parties have expressly agreed in the settlement that an additional amount of $40,000 in Jones Act damages are available to be "recovered" by Boudreaux,[4] depending on the outcome of the appeal in *Boudreaux I.* Accordingly, a major premise on which the majority opinion is based is a false premise.

The majority opinion also erroneously concludes that the *only* offset recognized in *Boudreaux I* is for maintenance and cure payments that duplicate Jones Act damages for past medical expenses, food, and lodging.[5] But the *Boudreaux I* decision was not so limited; it recognized "explicit[ly]"[6] for the first time that an employer may offset against Jones Act damages maintenance and cure payments that the employer was not required to pay under *McCorpen.*[7] The parties have agreed that Transocean has a *McCorpen* defense worth $40,000 (the difference between the $90,000 "high" amount and the $50,000 "low" amount in the settlement agreement). The only question is whether the settlement agreement intended for Boudreaux to recover the additional $40,000 when on appeal, our court held that although an employer could not recover maintenance and cure payments that it did not owe by means

---

[3] *Ante* at 8.

[4] The release and settlement agreement provides: "If a Jones Act employer is *not* allowed to recover maintenance and cure payments made to a seaman who is not entitled to such payments under *McCorpen*, Boudreaux will recover $90,000.00 (the 'high' amount or the 'maximum')." (emphasis in original).

[5] *Ante* at 9.

[6] *Boudreaux*, 721 F.3d at 728.

[7] *Id.* ("Today, we merely render explicit what has been implicit for many years: that once a shipowner pays maintenance and cure to the injured seaman, the payments can be recovered only by offset against the seaman's damages award—not by an independent suit seeking affirmative recovery.").

14

of an independent, affirmative recovery against a seaman that might exceed the amount of Jones Act damages, an employer could offset maintenance and cure payments against Jones Act damages.  The unambiguous terms of the settlement agreement and release reflect that because Transocean is entitled to "recover" maintenance and cure payments that it did not owe under the legal analysis set forth in *Boudreaux I*, Boudreaux receives only $50,000 under the settlement agreement:

> Transocean and Boudreaux agree to compromise and settle all disputes between them, with the precise amount of the settlement to be determined by the Court's ruling on whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen.*  If a Jones Act employer is *not* allowed to recover maintenance and cure payments made to a seaman who is not entitled to such payments under *McCorpen,* Boudreaux will recover $90,000.00 (the "high" amount or the "maximum").  If a Jones Act employer *is* allowed to recover such maintenance and cure payments, Boudreaux will recover only $50,000.00 (the "low" or "minimum" amount).

## I

The district court's construction of the settlement agreement and release is correct.  Boudreaux's right to receive the additional $40,000 did not turn on whether Transocean obtained a ruling on appeal that a Jones Act employer is entitled, by means of *an independent, direct action*, to recover maintenance and cure payments made to an employee who was not entitled to them.  The settlement agreement and release provided that the right to receive the additional $40,000 turns only "on whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen.*"  Our court held in *Boudreaux I* that a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under

*McCorpen* through means of an offset or setoff.  The legal theory under which such a "recover[y]" may be obtained is not determinative under the terms of the release and settlement agreement, and in the present case, there are agreed damages from which the offset can be satisfied.

The district court's reasoning is thorough and compelling, and I quote it at length:

> In reviewing the Settlement Agreement, the Court finds no ambiguity in the recovery provision and settlement terms.  The parties unambiguously agreed that the operative question for determining whether the upper or lower settlement amount controlled was "whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen*."  (Rec. Doc. No. 84-3 at 2).  When compared to the language of the ultimate Fifth Circuit opinion resolving the issue, it is clear that the question was resolved in the affirmative – triggering the low settlement amount.

> The Fifth Circuit held specifically in its amended opinion "that once a shipowner pays maintenance and cure to the injured seaman, the payments can be recovered . . ." *Boudreaux*, at 728 (emphasis added).  The common use of the terms "recover" and "recovered" in both the Settlement Agreement and the Fifth Circuit's opinion demonstrate the settlement provision was answered with a "yes."

> Complicating the analysis is the Fifth Circuit's limitation in the same sentence that payments may be recovered "only by offset against the seaman's damages award – not by an independent suit seeking affirmative recovery." *Id.*  Although this limitation provided neither side with a clear victory on appeal, and constrains the reach of the holding, this does not change the settlement calculation.  The opinion unambiguously held that a "Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen*." (Rec. Doc. No. 84-3 at 2).  The fact that the recovery is limited is of minimal relevance to the instant dispute.  The Settlement Agreement contains no reference to the amount of

recovery. Instead, the low amount is triggered per the agreement if "a Jones Act employer is allowed to recover," without reference to a required recovery amount or a limitation on the means for seeking recovery. Absent more express language demanding a different result for limited recovery – which is absent from the Settlement Agreement as it was drafted by the parties – the Court must conclude the low amount is applicable.

Boudreaux provides almost no analysis in his original Motion or Reply on the terms as used in the Settlement Agreement and the Fifth Circuit's opinion. Rather, Boudreaux attempts to argue that statements made by Transocean throughout the course of litigation establish that Boudreaux is entitled to the high settlement amount. These arguments fail.

Boudreaux attempts to frame the issue as follows – the high/low settlement amount is controlled by which party was successful on appeal. Since the Fifth Circuit did not accept Transocean's argument that an affirmative cause of action for past maintenance and cure payments exists, Boudreaux argues that it was the prevailing party on appeal and should be entitled to the high settlement amount. This analysis fails to recognize the actual provisions agreed to by the parties. The Settlement Agreement does not speak in terms of the prevailing party on appeal. Rather, the measure of damages is "whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen*." (Rec. Doc. No. 84-3 at 2). As already stated, this question was answered affirmatively by the Fifth Circuit. It is irrelevant that Transocean was not a complete victor on appeal. The Settlement Agreement does not require it to be for the low settlement amount to be triggered.
I would affirm the district court.

## II

Boudreaux has contended in our court that the high-low settlement agreement would have been meaningless and Boudreaux would not have had an incentive to enter the agreement if the parties intended a right of offset to

No. 14-30776

trigger the "allowed to recover" language in the release and settlement agreement since Transocean always had the right to offset maintenance and cure payments from an award of Jones Act damages. However, Boudreaux can cite to no authority in our circuit, prior to the decision in *Boudreaux I*, that recognized such an offset against Jones Act damages. The *Boudreaux I* decision was the first to recognize such a right in our circuit, and in the briefing in the district court and before our court in *Boudreaux I*, neither of the parties considered the possibility that an offset might be a means of recovering maintenance and cure payments.

In *Boudreaux I* our court refused to recognize an independent cause of action that might permit an employer to obtain a free-standing judgment against a seaman for maintenance and cure payments, but our court did, for the first time, "explicit[ly]" recognize the right to offset such payments against Jones Act damages recovered by an injured seaman.[8] Although the *Boudreaux I* decision said "[t]oday, we merely render explicit what has been implicit for many years," it cited no authority for this proposition. The only authority mentioned in *Boudreaux I* that discusses the possibility of an offset or setoff is a 1972 decision from the Eastern District of Pennsylvania, which determined that an employer may use a contractual setoff to recover maintenance and cure payments procured by fraud. That Pennsylvania decision is referenced only in Judge Clement's concurring opinion in *Boudreaux I*.[9]

---

[8] *Id.*; *see also id.* ("If the employer finds any 'causal link' between the seaman's present injury and a concealed pre[e]xisting disability, it can bring suit under *McCorpen* and terminate its obligation to pay—even if the seaman's on-the-job accident (and the employer's negligence) contributed to the injury. And to the extent that the employer has already paid benefits, it is entitled to recoup them when there are damages to offset.").

[9] *Id.* n.1 (Clement, J., concurring) (citing *Bergeria v. Marine Carriers, Inc.*, 341 F. Supp. 1153, 1156 (E.D. Pa. 1972)).

No. 14-30776

Nor has Boudreaux cited authority for the proposition that at the time he and Transocean entered into the settlement agreement and release, our precedents recognized an offset or setoff when a *McCorpen* defense to payment of maintenance and cure has been established. The *Boudreaux I* decision recognized that our cases prohibited a double recovery to the extent that Jones Act damages duplicate maintenance and cure payments.[10] But that is a different matter from a holding that when an employer establishes under *McCorpen* that maintenance and cure was not owed, the employer is entitled to offset maintenance and cure payments from Jones Act damages without proof of duplication. The "explicit" right to offset announced in *Boudreaux I* is not dependent upon showing that the Jones Act damages duplicate, to some extent, the maintenance and cure payments.

At oral argument, Boudreaux relied upon our court's decision in *Johnson v. Cenac Towing, Inc.*[11] In *Johnson*, this court held that *McCorpen* does not bar a Jones Act claim.[12] We acknowledged that contributory negligence applies in Jones Act cases and held that "contributory negligence may be found where a seaman has concealed material information about a pre-existing injury or physical condition from his employer."[13] In other words, "[a]lthough the *McCorpen* rule is not applicable to a Jones Act negligence claim,"[14] conduct underlying a *McCorpen* defense can give rise to a valid defense of "contributory negligence."[15] The court in *Johnson* described contributory negligence as an

---

[10] *Boudreaux*, 721 F.3d at 727.

[11] 544 F.3d 296 (5th Cir. 2008).

[12] *Id.* at 302.

[13] *Id.* at 303-04.

[14] *Id.* at 302.

[15] *Compare id.* at 301 (discussing the elements of a *McCorpen* defense), *with id.* at 303-04 (explaining that contributory negligence can be found under essentially the same facts).

No. 14-30776

"affirmative defense" that would give rise to proportionate responsibility and potentially a proportionate reduction in damages, not an "offset" or a "set-off" determined by the amount of maintenance and cure payments wrongfully received.

Arguing to a jury that false statements about pre-existing injuries should be considered some degree of contributing fault is not the same thing as seeking an offset for all maintenance and cure payments under a *McCorpen* defense. An employer who establishes that a concealed prior condition is causally linked to the subsequent injury is entitled to be relieved from making *any* maintenance and cure payments, not just a percentage of maintenance and cure payments representing the extent that the pre-existing condition contributed to cause the subsequent injury. The offset described in *Boudreaux I* similarly does not limit an offset to only a portion of the maintenance and cure payments.

### III

Boudreaux raises other arguments as to why he should be entitled to recover the additional $40,000 in Jones Act damages under the settlement agreement, but the district court correctly rejected each of those arguments. I additionally note that with regard to the argument that the mandate rule or the law of the case should foreclose Transocean's claims in this appeal, only a summary judgment that the district court granted on a pure question of law was before our court in the *Boudreaux I* appeal. Although our court was certainly aware of the terms of the settlement agreement, the meaning of the settlement agreement was not before our court. The parties had not put the terms of the settlement agreement at issue, and this court had no occasion to resolve how the resolution of the pure legal questions presented by the appeal in *Boudreaux I* would affect the parties' rights under the settlement

20

No. 14-30776

agreement. In fact, the concurring opinion, which fully joined the judgment in *Boudreaux I*, expressly noted that it agreed with the right to a setoff and that "[t]his is the result Boudreaux and Transocean sought by way of their bracketed settlement agreement. On the facts of this case, I would find recovery permissible."[16] The majority opinion in *Boudreaux I* did not take issue with this conclusion.

\* \* \*

I respectfully dissent.

---

[16] *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 729 n.2 (5th Cir. 2013) (Clement, J., concurring).